**BARTELL POWELL**
LLP | ATTORNEYS AT LAW

JASON S. BARTELL*
MICHAEL A. POWELL **
FRANK A. JANELLO **
JACOB P. SMITH

**REPLY TO:**
CHAMPAIGN ADDRESS

\* ALSO LICENSED IN INDIANA
\*\* ALSO LICENSED IN MISSOURI

## CEASE AND DESIST / PRESERVATION NOTICE

March 11, 2020

Via email to counsel and certified mail to recipient

Mr. Jamie Warmbir
22 Pendleton Way
Bloomington, IL 61704

Dear Mr. Warmbir:

As you are aware, our law firm represents Mavidea Technology Group, LLC (the "Company"). You, personally, served as a manager of the Company and an entity that you wholly own, Warmbir Technology, Inc., holds 28% of the membership interests of Company. Prior to February 10, 2020 you played a substantial day-to-day role in the Company since its inception and received a guaranteed payment from the Company for those services through your entity.

### BACKGROUND

On Monday, February 10, 2020, you tendered 1) a letter resigning as Manager and 2) a separate letter proposing a buyout of the Company's IT Division. You indicated that in the event the offer is not accepted by 5pm Central Time on February 14, 2020, it was your intention to immediately form a new LLC and solicit the Company's IT clients to migrate to your new venture if the deadline passed without acceptance of your proposal. You also indicated that the

CHAMPAIGN
10 EAST MAIN STREET
CHAMPAIGN, IL 61820
P 217.352.5900 | F 217.352.0182

BLOOMINGTON
207 WEST JEFFERSON STREET, SUITE 602
BLOOMINGTON, IL 61701
P 309.807.5275 | F 309.807.5015

IT Division employees are very loyal to you and that you would be encouraging all of them to immediately leave the employ of the Company.

The Company has a substantial list of IT Division clients that have been developed through the efforts of you, other managers, and employees. The Company has put a significant effort into the development of a sales pipeline of future clients. The company has systemized processes that it has developed and used to service its IT customers. The Company has also put a large amount of effort and resources into the development of its brand, ethos, and employee selection/retention.

The Company's customers have a contractual relationship with the Company that include fixed terms with automatic renewals and, in many cases, multi-year work scopes. Prior to receiving the proposal, most customers are satisfied with the services of the Company and it would be expected that all or substantially most of the customers would simply permit the automatic renewal clause to effectuate a renewal of their contracts.

The IT Division of the Company handles the security and safekeeping of large amounts of data for its customers, including data with heightened privacy concerns. Your potential access to these materials per the means described below is particularly concerning and may require injunctive action if not immediately remedied.

## WRONGFUL ACTS

Our investigation of the facts pertaining to your separation is in its early stages. We intend on pursuing further investigations through written discovery, forensic data collection, the issuance of subpoenas to third parties, and depositions of you, certain employees and customers, as well as third parties who have been identified in assisting in your indirect efforts to procure and take advantage of the Company's intellectual property. Notwithstanding the foregoing, we are aware of the following wrongful acts:

1) You relinquished your authority to act as a manager/agent of the Company on February 10, 2020. On February 14, you were informed that the Company would not be accepting your offer and that you would need to tender any of the Company's property back to the Company on that day. Your telephone and telephone number are owned by the Company on a Company wireless plan. After learning that you would be required to give back your phone, you contacted the wireless company and wrongfully posed as an agent of the Company and requested that the wireless company transfer the Company's phone number and the phone to a plan owned by you in a personal capacity. This has enabled you to wrongfully receive inquiries from the Company's customers, prospective customers, employees, and other third parties to divert Company property for your own use. Furthermore, in today's world, a cell phone is similar to a laptop in that you have access to client data, vendor sign-ons,

and network password. You were previously notified on multiple occasions that this was not acceptable, yet you have failed to remedy the situation.

2) You have used direct and indirect means to raid the employees of the Company by either contacting or using third parties to contact these employees to entice them to leave and enter your employ. You stated at the time of your resignation your intent to convert them to your business. Through recent resignations, we have learned that you have followed through on this threat.

3) Knowing that you would be starting a competing venture and that your email access would likely be cut off, on February 12, 2020, you forwarded an email chain you had with an individual who had applied for a senior level position at the Company and was on hold due to budgetary considerations. It was likely that you were intending on taking advantage of this prospect at a future time in your own company.

4) While serving as a Manager of the Company, you either 1) failed to follow Company policy on procuring contracts with non-competition agreements on certain employees, or 2) caused such agreements to be deleted from the archives of the Company. This was done for the purpose of being able to immediately transfer these employees to your new competing entity after your termination without restriction.

5) You have knowingly contacted or reached out to prospective customers utilizing the information on our prospect client "Warm 250" list to interfere with the Company's ability to gain a prospective economic advantage from these relationships it has invested a great deal of time and effort developing.

6) You have been coordinating and discussing your efforts to obtain the Company's clients with our current employees in an attempt lure them to employment with your company.

7) You converted a new client, Holt Supply, who had confirmed the client relationship with the Company in writing. This was accomplished through breaking protocol of long-established procedures for onboarding new clients and acting on time sensitive information in a way that benefited your new endeavor while you were a Manager of our Company.

## OPERATING AGREEMENT OBLIGATIONS

While the operating agreement does permit managers to have outside business interests, the document does not alleviate obligations to protect the Company's proprietary information and not use it for your own advantage. The Operating Agreement states as follows:

5.4 <u>Duties and Obligations of the Managers</u>

(a) The Managers shall take all actions on behalf of the Company which may be necessary or appropriate (i) for the continuation of the Company's valid existence as a limited liability company under the Act and (ii) for the accomplishment of the Company's purposes, including the acquisition, development, maintenance, preservation, and operation of Property in accordance with the provisions of this Agreement, the Act, and all other applicable laws and regulations.

(c) The Managers shall conduct the affairs of the Company in the best interests of the Company and of the Members, including the safekeeping and use of all of the Property for the exclusive benefit of the Company.

These obligations are not erased upon the resignation of a manager.

## FIDICIARY DUTY AS MANAGER

Although it is generally permissible for employees who are not officers or managers to "plan, form, and outfit a competing corporation while still working for the employer," officers and managers have a broader fiduciary duty to their corporate employer not to (1) actively exploit their positions within the corporation for their own personal benefit, or (2) hinder the ability of a corporation to continue the business for which it was developed." *Veco Corp. v. Babcock*, 243 Ill.App.3d 153, 160.

Additionally, your fiduciary duty did not end on the day that you tendered the notice resigning as manager. Your duty to the Company continues to this day. You cannot take the confidential information, business plans, knowledge of the customer base and their contracts, the prospective customer list, the relationship the Company has with the employees, and knowledge of the business operations and utilize those in a manner to the detriment to the Company. Not only would such actions be unethical, such actions are a breach of your fiduciary obligations. You are not free to utilize this knowledge coupled with these relationships upon leaving, nor are you permitted to indirectly do the same by allowing third parties to undertake the same activities.

## ILLINOIS TRADE SECRETS ACT

765 ILCS 1065/2(d)(1) and (2) state:
"(d) 'Trade secret' means information, including but not limited to, technical or non-technical data, a formula, pattern, compilation, program, device, method, technique, drawing, process, financial data, or list of actual or potential customers or suppliers, that:
    (1) is sufficiently secret to derive economic value, actual or potential, from not being generally known to other persons who can obtain economic value from its disclosure or use; and
    (2) is the subject of efforts that are reasonable under the circumstances to maintain its secrecy or confidentiality."

"[Plaintiff's] customer lists, which it alleged take considerable effort, time, and money to compile, could be deemed a trade secret and sufficiently secret to derive economic value." *Strata Mktg., Inc. v. Murphy*, 317 Ill. App. 3d 1054, 1069, 740 N.E.2d 1166, 1177 (1st Dist. 2000). "Items such as customer lists, pricing information, and business techniques can be trade secrets if the employer has developed the information 'over a number of years at great expense'" *Abbott-Interfast Corp. v. Harkabus*, 250 Ill. App. 3d 13, 22, 619 N.E.2d 1337, 1344 (2nd Dist. 1993) (quoting *Reinhardt Printing Co. v. Feld*, 142 Ill. App. 3d 9, 18 (1st Dist. 1986)). "[K]nowing the prices offered by competitor to a specific customer for a specific set of services certainly would enable a competitor to make a more attractive bid in an attempt to displace the current provider." *SKF USA, Inc. v. Bjerkness*, 636 F. Supp. 2d 696, 712 (N.D. Ill. 2009). *See also Covenant Aviation Security, LLC v. Berry*, 15 F. Supp. 3d 813 (N.D. Ill. 2014).

## TORTIOUS INTERFERENCE WITH CONTRACTS AND PROSPECTIVE ECONOMIC ADVANTAGES

Under Illinois law, the elements for a claim of tortious interference with contractual relations are: 1) the existence of a valid and enforceable contract, 2) defendant's awareness of the contractual obligation, 3) defendant's intentional and unjustified inducement of a breach, 4) subsequent breach caused by defendant's unlawful conduct, and 5) damages. *See Seip v. Rogers Raw Materials Fund, L.P.*, 408 Ill.App.3d 434, 444.

Furthermore, the elements for a claim of interference with a prospective economic advantage are: 1) the plaintiff's reasonable expectation of entering into a valid business relationship, 2) the defendant's knowledge of the plaintiff's expectancy, 3) purposeful interference by the defendant that prevents the plaintiff's legitimate expectancy from ripening into a valid business relationship, and 4) damages to the plaintiff resulting from such interference. *See Dowd & Dowd, Ltd. v. Gleason*, 181 Ill.2d 460, 484.

In order to prevail on a claim in this context, the Company would not be required to prove that you relied on the Company's confidential information. Please see *Dames & Moore v. Baxter & Woodman, Inc.*, 21 F. Supp. 2d 817, 823 (N.D.Ill. 1998) where the defendant solicited plaintiff's employees and encouraged plaintiff's customers to end their relationships with the plaintiff. We would simply need to prove that you used the Company's confidential information to do so.

## PRESERVATION NOTICE

You have possession or control of paper documents or electronically stored information ("ESI") relevant to the foregoing claims the Company has against you.

Please do not destroy, alter or erase any paper documents or ESI in your possession or control relating to the Defects or Concealment (for example, letters, memoranda, reports, handwritten notes, emails, voice messages, computer records and programs, data, DVDs/CDs, plans).

This Preservation Notice applies to all sources of ESI including, but not limited to, company and home computer networks, laptop and tablet PCs, fast drives, cell phones and similar devices.

You must continue to retain these materials until further notice.

## CONCLUSION

In conclusion, you are not permitted to perform additional actions or inactions in violation of the law. To the extent possible, the Company demands that you mitigate their damages. Furthermore, we implore that you immediately release the Company's telephone number and return any and all other Company property, intellectual or tangible, back to the Company.

Very Truly Yours,



Jason S. Bartell