UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
PEORIA DIVISION

| | | | |
|---|---|---|---|
| MAVIDEA TECHNOLOGY GROUP, LLC | ) | | |
| | ) | | |
| | ) | | |
| Plaintiff, | ) | | |
| | ) | | |
| vs | ) | Case No. | 1:20-CV-1139 |
| | ) | | |
| JAMIE WARMBIR; CHARLOTTE WARMBIR; WARMBIR IT SOLUTIONS, LLC, an Illinois limited liability company; | ) | | |
| | ) | | |
| | ) | | |
| Defendants. | ) | | |

**DEFENDANT JAMIE WARMBIR'S MEMORANDUM OF LAW IN SUPPORT OF HIS MOTION TO DISMISS COUNTS VIII AND IX OF PLAINTIFF'S VERIFIED FIRST AMENDED COMNPLAINT PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 12(b)(6)**

NOW COMES the Defendant, JAMIE WARMBIR, ("Warmbir"), by and through his undersigned counsel, and for his Memorandum of Law in Support of his Motion to Dismiss Counts VIII and IX of the Verified Amended Complaint filed by Plaintiff, MAVIDEA TECHNOLOGY CROUP, LLC, ("Plaintiff" or "Mavidea"), pursuant to Federal Rule of Civil Procedure 12(b)(6) states as follows:

**I.     Introduction**

Plaintiff filed a multi-count Verified First Amended Complaint (the "Complaint") against Defendants, Warmbir, Charlotte Warmbir and Warmbir IT Solutions, LLC. *See* Doc. 28. At the heart of each count of the Complaint is Plaintiff's allegations that Warmbir, a former Manager of Plaintiff and head of its Information Technology division, resigned his position as Manager and diverted employees and customers away from Plaintiff's IT division to Defendant, Warmbir IT Solutions, LLC, an Illinois limited liability company that he founded with his wife. *See* Doc. 28

1

generally. Each count of the Complaint seeks various relief pursuant to different legal theories for these central allegations against Warmbir and the co-Defendants. The Defendants have filed verified answers to Counts I through VII of the Complaint. Warmbir now moves, pursuant to Federal Rule of Civil Procedure 12(b)(6) for the dismissal of Counts VIII and IX. Count VIII alleges violation of the Illinois Cable Piracy Act (the "ICPA") by Warmbir. Counts IX alleges violations of the Racketeer Influenced And Corrupt Organizations Act (the "RICO Act") against Warmbir.

For the reasons that follow, both Count VIII and IX of the Complaint must be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted.

## II. Legal Standards

Federal Rule of Civil Procedure 12(b)(6) allows a party to assert as a defense to any claim for relief the "failure to state claim upon which relief can be granted." *Cook v. Winfrey.*, 141 F.3d 322, (7th Circ., 1998). Rule 12(b)(6) will be invoked to dismiss a claim if "it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations" of the complaint. *Id.* In reviewing a Motion to Dismiss pursuant to Rule 12(b)(6), courts must accept all statements of fact in the complaint as true and all reasonable inferences must be drawn in favor of the non-moving party. *Dixon v. Page*, 291, F.3d 485, 486 (7th Cir., 2002). To be sufficiently pled, a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." *Fed. R. Civ. P. 8(a)(2).* The pleading standard, however, demands more than an unadorned, "the-defendant-unlawfully-harmed-me" accusation. *Ashcroft v. Igbal,* 129 S. Ct. 1937, 1949, (2009). Thus, a complaint will not suffice if it makes "naked assertions devoid of further factual enhancement." *Id.* at 1949. When ruling on a motion to dismiss pursuant to Rule 12(b)(6),

the Court is neither bound by the plaintiff's legal characterization of the facts, nor required to ignore facts set forth in the complaint that undermined the plaintiff's claims. *Scott v. O'Grady*, 975 F.2d, 366,368 (7th Cir. 1992).

## III. ARGUMENT

Counts VIII and IX of the Complaint must be dismissed as both fail to state a cause of action under their respective statutes. In Count VIII, Plaintiff attempts to state a claim for violation of the Illinois Cable Piracy Act (the "ICPA"), 720 ILCS 5/16-18(a)(6)(E). While there is little caselaw interpreting this statute, a review of the relevant definitions of the statute demonstrates that Plaintiff has not alleged a violation of the Illinois Cable Piracy Act as the facts of this case do not meet the statutory definitions for the components of the Illinois Cable Piracy Act.

In Count IX, Plaintiff attempts to state a claim for violation of the RICO Act by Warmbir. These allegations are premised upon Warmbir's alleged misappropriation of Plaintiff's trade secrets and of a phone number attached to an account in Plaintiff's name. Count IX is fatally deficient, however, in that it fails to plead a pattern of racketeering conduct as required for violation of the Statute.

Accordingly, both Counts VIII and IX of Plaintiff's Complaint should be dismissed by this Court.

### A. Count VIII Fails to State a Claim for Violation of the Illinois Cable Piracy Act

In Count VIII, Plaintiff seeks to state a claim for violation of the ICPA. Specifically, Plaintiff alleges in paragraph 132 that Warmbir violated 720 ILCS 5/16-18(a)(6)(E). That provision provides:

> "(a.) Injury to wires or obtaining service with intent to defraud. A person commits injury to wires or obtaining service with intent to defraud when he or she knowingly:
>
> ...

3

"**(6)** obtains, or attempts to obtain, any telecommunications service with the intent to deprive any person of the lawful charge, in whole or in part, for any telecommunications service:

**(E)** by any other trick, stratagem, impersonation, false pretense, false representation, false statement, contrivance, device, or means."

As noted by the Central District Court in *Joe Hand Promotions, Inc. v. Mooney's Pub, Inc.*, there is very little case law on the ICPA. *Joe Hand Promotions, Inc. v. Mooney's Pub, Inc.*, Case No. 14-cv-1223, 2014 U.S. Dist. LEXIS 124947, 15(C.D. Ill, 2014). Despite the dearth of case law, the Plaintiff's failure to state a claim for violation of the ICPA can be seen clearly based on a review of the applicable definitions in the statute. Specifically, the ICPA defines "communication service" as follows:

"720 ILCS 5/16.01 Definitions

In this Article, unless the context clearly requires otherwise, the following terms are defined as indicated:

"Communication service" means any service lawfully provided for a charge or compensation to facilitate the lawful origination, transmission, emission, or reception of signs, signals, data, writings, images, and sounds or intelligence of any nature by telephone, including cellular telephones or a wire, wireless, radio, electromagnetic, photo-electronic or photo-optical system; and also any service lawfully provided by any radio, telephone, cable television, fiber optic, satellite, microwave, Internet-based or wireless distribution network, system, facility or technology, including, but not limited to, any and all electronic, data, video, audio, Internet access, telephonic, microwave and radio communications, transmissions, signals and services, and any such communications, transmissions, signals and services lawfully provided directly or indirectly by or through any of those networks, systems, facilities or technologies." 720 ILCS 5/16.01

The Central District Court in *Joe Hand Promotions, Inc. v. Mooney's Pub, Inc.* summarized the definition of a communication service by stating that it consists of "transmissions, signals, and services that are "lawfully provided by any . . . cable television [or] satellite . . . network, system, facility, or technology." *Joe Hand Promotions, Inc. v. Mooney's Pub, Inc.*, Case No. 14-cv-1223, 2014 U.S. Dist. LEXIS 124947 at 15-16 citing 720 ILCS 5/16.01.

4

The ICPA further defines "Communication service provider" as:

"Communication service provider" means: (1) any person or entity providing any communication service, whether directly or indirectly, as a reseller, including, but not limited to, a cellular, paging or other wireless communications company or other person or entity which, for a fee, supplies the facility, cell site, mobile telephone switching office or other equipment or communication service; (2) any person or entity owning or operating any cable television, fiber optic, satellite, telephone, wireless, microwave, radio, data transmission or Internet-based distribution network, system or facility; and (3) any person or entity providing any communication service directly or indirectly by or through any such distribution system, network or facility. 720 ILCS 5/16.01

When these definitions are read in conjunction with the language of 720 ILCS 5/16-18(a)(6)(E), it is clear that the ICPA is inapplicable to the allegations of Plaintiff's Complaint. Plaintiff's attempt to state a claim for violation of the ICPA fails because Plaintiff has not, and cannot, allege that: (1.) Plaintiff is a communications service provider within the meaning of the ICPA; (2.) Plaintiff's telephone that it alleges Warmbir inappropriately obtained constitutes a communications service within the meaning of the ICPA; or (3.) that Warmbir attempted to deprive Plaintiff of the lawful charge for a telecommunications service.

Plaintiff has not alleged that it is a communications service provider within the meaning of the ICPA. On the contrary, Plaintiff's allegations in paragraph 10 unequivocally allege that it is "engaged in the business of IT Solutions, software development, digital marketing and website design" and therefore not a communications service provider. *See* Doc. 28, ¶10. While the language of 720 ILCS 5/16-18(a)(6)(E), does not explicitly require that a plaintiff be a communications service provider, the requirement is implicit insofar as logically only a communications service provider can provide a communications service in exchange for a charge. Based upon the allegations of Count VIII, Verizon is the communications service provider in this case. *See* Doc. 28, ¶41, ¶133, ¶134, ¶135.

Likewise, the phone number and phone that Plaintiff alleges Warmbir misappropriated cannot constitute a communications service as defined by 720 ILCS 5/16.01. A communications service is a service that facilitates the transfer of signals or data by various means such as telephone or wires in exchange for a charge or some other form of compensation. While a telephone can be a part of the service, it is not the service itself. The charge for the communications service is consideration paid for the use of the communications service. Although Plaintiff makes a half-hearted attempt to do so in paragraph 135, it cannot plausibly allege that the phone and phone number it alleges that Warmbir inappropriately obtained constitutes a telecommunications service. *See* Doc. 28, ¶135.

In conjunction with these definitions, it is clear that a person violates 720 ILCS 5/16-18(a)(6)(E) not merely by obtaining the telecommunications service of another individual, but by doing so with the specific intent to deprive the individual of the charge or payment for that telecommunications service. The facts, as alleged by Plaintiff, do not fit this situation. Plaintiff does not allege that Warmbir had the intent to deprive Plaintiff of the charges for use of the telephone account or telephone, let along any actual communications service. In fact, Plaintiffs do not even allege what the charge for the communications service could plausibly be in this context. Based on upon Plaintiff's allegations the only charge in question would be the charge Verizon receives for the phone number. Plaintiff is certainly not alleging that Warmbir obtained the phone number with the attempt to deprive Verizon of the charges for the use of the number. Rather than depriving Plaintiff of a charge it was entitled to receive, if anything Plaintiff's allegations indicate that Warmbir has removed from Plaintiff of any obligation to pay a charge to a legitimate communications service provider.

When viewed in totality, it is clear that the facts alleged by Plaintiff do not, and cannot, satisfy any element of the statutory claim for violation of 720 ILCS 5/16-18(a)(6)(E). Accordingly Count VIII of Plaintiff's Verified Amended Complaint must be dismissed with prejudice pursuant to FRCP Rule 12(b)(6) for failure to state a claim upon which relief can be granted.

**B. Count IX Fails to State a Claim for Violation of the RICO Act.**

In Count IX, Plaintiff alleges violation of the RICO ACT. Count IX must be dismissed, however, because the allegations of Count IX fail to plead all the requisite elements of a violation of the RICO Act. Specifically, Plaintiff fails to properly allege a pattern of racketeering activity as required by statute.

The RICO Act allows for a civil cause of action by "[a]ny person injured in his business or property by reason of a violation of section 1962 of this chapter . . ."*18 U.S.C.* § 1964(c). Under section 1962, it is unlawful to participate in the "conduct of [an] enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt." *18 U.S.C.* § 1962(c). A violation requires proof of four elements: "(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity." *Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 496, 105 S. Ct. 3275, 87 L. Ed. 2d 346 (1985). A RICO action is not intended to be a surrogate for garden-variety fraud actions properly brought under state law. *Midwest Grinding Co. v. Spitz, 976 F.2d 1016*, 1019, (7th Cir. 1992).

A pattern of racketeering activity consists of at least two predicate acts of racketeering committed within a ten-year period. *Midwest Grinding Co. v. Spitz, 976 F.2d 1016*, 1019, (7th Cir. 1992) citing 18 U.S.C. § 1961(5). Predicate acts are acts indictable under a specified list of criminal laws, 18 U.S.C. § 1961(1)(B). To allege a "pattern of racketeering activity" a civil RICO plaintiff may no longer get by merely alleging two predicate acts, but must also satisfy the so-called "continuity plus relationship" test: the predicate acts must be related to one another (the

relationship prong) and pose a threat of continued criminal activity (the continuity prong). *Id.* To form a pattern, the predicate acts must exhibit "continuity plus relationship." *Id.* See also *Empress Casino Joliet Corp. v. Balmoral Racing Club, Inc.* 831 F.3d 815, 827-828 (7th Cir. 2016). ("To form a pattern, the predicate acts must exhibit "continuity plus relationship.") The requirement of continuity plus relationship exists to ensure that RICO "targets long-term criminal conduct", considering Congress created the statute with the goal of "eradicating organized, long-term, habitual criminal activity"—not simple business disputes. *Empress Casino Joliet Corp. v. Balmoral Racing Club, Inc.*, 831 F.3d at 828 (citing *Gamboa v. Velez*, 457 F.3d 703, 705 (7th Cir. 2006)). The Supreme Court has divided continuity into two analytical types: "'Continuity' is both a closed- and open-ended concept, referring either to a closed period of repeated conduct, or to past conduct that by its nature projects into the future with a threat of repetition." *Id. at 828* citing *H.J. Inc. v. Northwestern Bell Telephone Co.*, 492 U.S. 229, 237, 109 S. Ct. 2893, 106 L. Ed. 2d 195 (1989).

Closed-ended continuity exists when the alleged scheme had a distinct ending point. *Jennings v. Auto Meter Prods., Inc.*, 495 F.3d 466, 473 (7th Cir. 2007). Closed-end continuity is satisfied by "a series of related predicates extending over a substantial period of time." *Empress Casino Joliet Corp. v. Balmoral Racing Club, Inc.*, 831 F.3d at 828. To determine whether a closed-ended scheme existed, the Seventh Circuit analyzes "the number and variety of predicate acts and the length of time over which they were committed, the number of victims, the presence of separate schemes and the occurrence of distinct injuries." *Balmoral Racing Club, Inc.*, 831 F.3d at 828 (citing *Morgan v. Bank of Waukegan*, 804 F.2d 970, 975 (7th Cir. 1986)). The "predicate acts must "extend over a substantial period of time"; "a few weeks or months" is considered insubstantial. *Midwest Grinding Co. v. Spitz, 976 F.2d* at 1025.

Open-ended schemes are more abstract: a plaintiff must show past conduct that "by its nature projects into the future with a threat of repetition". *H.J. Inc v. Northwestern Bell Telephone Co..*, 492 U.S. at 241. In this circuit, three circumstances qualify for open-ended continuity: "when (1) a specific threat of repetition exists, (2) the predicates are a regular way of conducting [an] ongoing legitimate business, or (3) the predicates can be attributed to a defendant operating as part of a long-term association that exists for criminal purposes." *Empress Casino Joliet Corp. v. Balmoral Racing Club, Inc.*, 831 F.3d at 828 (citing *Vicom, Inc. v. Harbridge Merchant Services, Inc.*, 20 F.3d 771, 780 (7th Cir. 1994)).

In Count IX, Plaintiff does not provide specific allegations identifying whether Warmbir's alleged "pattern of racketeering activity" represents a closed or open-ended scheme. Notwithstanding this deficiency, it is clear that Plaintiff has not plead the allegations of Count IX in such a way so as to allege either closed or open-ended continuity. Plaintiff alleges in Count IX two categories of predicate acts, the copying and improper taking of Plaintiff's trade secrets and the unauthorized transfer of Plaintiff's cell phone number to Warmbir in violation of 18 U.S. § 1029(a)(2). When viewed together, these predicate acts do not demonstrate either open-ended or closed continuity to substantiate a pattern of racketeering activity.

### 1. Plaintiff has not alleged an open-ended scheme.

With regards to the possibility of an open-ended scheme, Plaintiff makes no allegation that any action by Warmir is part of the regular method of conducting business by Warmbir. Likewise, Plaintiff makes no allegation that the predicate actions of Warmbir are attributed to Warmbir operating as part of a long-term criminal association. Thus, the only exception remaining to Plaintiff to show an open-ended scheme is to allege that Warmbir's conduct has a specific threat of repetition. *Empress Casino Joliet Corp. v. Balmoral Racing Club, Inc.*, 831 F.3d at 828.

The taking of Plaintiff's cell phone number is clearly an isolated event which Warmbir cannot repeat. As alleged by Plaintiff, Warmbir's taking of Plaintiff's trade secrets likewise consisted of an isolated event. In paragraphs 69 and 72, Plaintiff makes an allegation on information and believe that Warmbir intends to further use and disclose Warmbir's trade secrets for his benefit. *See Doc.* 28, ¶69, ,¶72. Those allegations are insufficient, however, to allege a specific threat of repetition. Any subsequent use by Warmbir of Plaintiff's trade secrets do not constitute new predicate acts. *See Mgmt. Comp. Servcies, Inc. v. Hawkins, Ash, Baptie & Co.,* 883 F.2d 48, 51 (7th Cir. 1989) (alleged predicate acts related to subsequent use of misappropriated software "go to the issue of damages" rather than constituting a new RICO offense). Clearly, therefore, Plaintiff has not alleged an open-ended scheme in this case.

### 2. Plaintiff has not alleged a closed scheme.

The essence of Plaintiff's allegations is most closely analogous to the close-ended continuity scheme that was analyzed and dismissed in *Midwest Grinding Co. v. Spitz, 976 F.2d* at 1025. In *Midwest,* the 7th Circuit Court upheld the dismissal of a plaintiff metal grinder's claims for violation of the RICO Act under FRCP Rule 12(b)(6). *In Midwest Grinding Co v. Spitz,* defendant Spitz held a one-third interest in the plaintiff metal grinding business and managed the plaintiff as its day-to-day president and board member *Id.* at 1018. Defendant Spitz had no non-compete agreement with the Plaintiff. *Id.* While still employed by the plaintiff, defendant Spitz helped a friend establish a competing metal grinding business and induced several customers and employees of the plaintiff to go to work for the competing business. *Id.* The defendant Spitz then resigned and went to work for the competing business. *Id.*

When analyzing the facts of *Midwest Grinding Co. v. Spitz,* the 7th Circuit Court first determined the alleged scheme could only be a closed-ended scheme. *Id.* at 1023. The 7th Circuit

based this holding on its determination that there is absolutely no "specific threat of repetition" in the future for one obvious reason: once defendant Spitz went to work for the opposing metal grinding company, he was perfectly free to compete with the plaintiff for customers and employees. *Id.* Absent a noncompetition or confidentiality clause, defendant Spitz owed no duty to the plaintiff; thus, the alleged scheme to fraudulently divert business and employees to the plaintiff's competitor ceased to exist when the defendant Spitz left the plaintiff. *Id.*

After determining that the alleged scheme was a closed-ended scheme, the 7th Circuit examined the existence of continuity under the relevant factors. The duration of the scheme did not argue in favor of continuity as the scheme was a one-shot scheme that lasted, at most, nine months, from the time defendant Spitz and the competing metal grinding business began establish the competing business in December 1985 to the time defendant Spitz resigned in August 1986. *Id.*at 1024. The second factor, the number and variety of predicate acts, was also found lacking as the predicate acts consisted primarily of hundreds of invoices sent through the mail to former customers of the plaintiff. *Id.* at 1024-25. While this scheme involved a considerable number of invoices, the bulk of them were sent to a few customers and were very similar to one another. *Id.* at 1025. The other factors also argued against a finding of continuity as the plaintiff was the only victim, the only scheme was the diversion of the plaintiff's customers and employees from the plaintiff to the competing steel grinding business and there was only one type of injury which was the loss of the plaintiff's business. *Id.* The 7th Circuit Court later noted that closed-ended schemes of this nature have "none of the trappings of a long-term criminal operation that carries with it a threat to society; it is, in short, a run-of-the-mill fraud case that belongs in state court." *Midwest Grinding Co. v. Spitz, 976 F.2d* at 1025.

When applying the factors to examine continuity under a closed scheme, it is clear that Plaintiff's allegations are deficient for the same reason that the plaintiff's allegations in *Midwest Grinding Co. v. Spitz* were. Plaintiff has alleged that Warmbir stole or otherwise misappropriated trade secrets of Plaintiff and converted a cell phone number belong to Plaintiff to Warmbir's own account. These acts took place within weeks of Warmbir's resignation as Manager of Plaintiff. The subsequent conversion of clients and employees from Plaintiff to Warmbir occurred within the few months following Warmbir's resignation. A period of time of a few months has been deemed insubstantial and does not satisfy the requirements for substantial duration for a closed scheme. Likewise, the volume of predicate acts consists of two acts: (1.) the transfer of the phone and phone number to Warmbir's own account; and (2.) the misappropriation of trade secrets. These isolated acts were each directed toward the Plaintiff and therefore do not show that Warmbir was operating a long-term criminal enterprise. Like in *Midwest Grinding Co. v. Spitz,* there is only one victim to the alleged scheme, the Plaintiff, one alleged scheme (the diversion of customers and employees from Plaintiff to Warmbir IT), and one type of injury (loss of Plaintiff's business).

Accordingly, Plaintiff has failed to allege a pattern of racketeering activity as either a closed or open-ended scheme. What Plaintiff has alleged, is nothing more than the type of garden variety civil business disputes that the 7th Circuit Court has repeatedly held to be unable to sustain a cause of action for violation of the RICO Act. Therefore, Count IX of Plaintiff's Complaint must be dismissed with prejudice for failure to state a claim in accordance with Federal Rules of Civil Procedure 12 (B)(6).

### III.  CONCLUSION

WHEREFORE, for the reasons stated herein, Defendant, JAMIE WARMBIR, respectfully requests that this Honorable Court dismiss Counts VIII and IX of Plaintiff's Verified Amended Complaint and for such other relief as this Court deems just and proper.

Dated:  August 18, 2020

JAMIE WARMBIR,

Defendant

/s/ A. Christopher Cox

A. Christopher Cox
ARDC# 6296142
Cox & Fulk, LLC
202 North Center Street
Bloomington, IL 61701
(309) 828-7331
christophercox@cxflegal.com

## CERTIFICATE OF COMPLIANCE

I hereby certify that the foregoing Memorandum of Law in Support of Defendant, Jamie Warmbir's Motion to Dismiss Counts VIII and IX of Plaintiff's Verified Amended Complaint Pursuant to Federal Rule of Civil Procedure 12(b)(6) complies with the patent provisions of C.D.LR 7.1 in that it contains 13 pages and 3,798 words.

JAMIE WARMBIR,

Defendant

/s/ A. Christopher Cox

A. Christopher Cox
ARDC# 6296142
Cox & Fulk, LLC
202 North Center Street
Bloomington, IL 61701
(309) 828-7331
christophercox@cxflegal.com

## CERTIFICATE OF SERVICE

I hereby certify that on August 18, 2020 I electronically filed the foregoing documents with the Clerk of Court using the CM/ECF system that will send notification of such filing(s) to the following:

Jason Bartell                    Email: jbartell@bartellpowell.com

Michael Powell                  Email: mpowell@bartellpowell.com


/s/ A. Christopher Cox

A. Christopher Cox
ARDC# 6296142
Cox & Fulk, LLC
202 North Center Street
Bloomington, IL 61701
(309) 828-7331
christophercox@cxflegal.com