UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
PEORIA DIVISION

MAVIDEA TECHNOLOGY )
GROUP, LLC )
         )
            Plaintiff, )
         )
     vs )     Case No.     1:20-CV-1139
         )
JAMIE WARMBIR; CHARLOTTE )
WARMBIR; WARMBIR IT SOLUTIONS, )
LLC, an Illinois limited liability company; )
         )
            Defendants. )

**DEFENDANT, JAMIE WARMBIR'S ANSWER TO PLAINTIFF'S VERIFIED AMENDED COMPLAINT**

NOW COMES the Defendant, JAMIE WARMBIR, ("Defendant"), by and through his undersigned counsel, and for his Answer to the Verified Amended Complaint filed by Plaintiff, MAVIDEA TECHNOLOGY CROUP, LLC, ("Plaintiff" or "Mavidea"), states as follows:

**JURISDICTION AND VENUE**

1.     This Court has subject matter jurisdiction over this action under 28 U.S.C. §1331 and 1367. The Court has federal question jurisdiction because Mavidea asserts claims under the Defend Trade Secrets Act ("DTSA"), 18 U.S.C. §1836, et. seq. and the Racketeer Influenced and Corrupt Organizations Act, codified as Title IX of the Organized Crime Control Act of 1970 ("RIO"), 18 U.S.C. §1961 et. seq.

**Answer:**     **Defendant admits the allegations of paragraph 1 of Plaintiff's Verified Amended Complaint.**

2.     The Court has supplemental jurisdiction over all claims for which the Court lacks original jurisdiction because Mavidea's claims arise out of the same common nucleus of operative

facts, namely, Defendants improper and illegal actions immediately before and after Jamie Warmbir's separation from Mavidea.

**Answer:** **Defendant admits that the Court has supplemental jurisdiction over all claims for which the court lacks original jurisdiction because Mavidea's claims arise out of the same common nucleus of operative fact. Defendant denies the remaining allegations of paragraph 2 of Plaintiff's Verified Amended Complaint.**

3.      This Court has general jurisdiction over Jamie Warmbir and Charlotte Warmbir as they are individuals domiciled in the State of Illinois.

**Answer:** **Defendant admits the allegations of paragraph 3 of Plaintiff's Verified Amended Complaint.**

4.      This Court has general personal jurisdiction over Warmbir IT as it is an entity 1) formed under the laws of the State of Illinois, 2) maintains its principal place of business in the State of Illinois, 3) regularly conducts business in the State of Illinois.

**Answer:** **Defendant admits the allegations of paragraph 4 of Plaintiff's Verified Amended Complaint.**

5.      Venue is proper in this District and Division pursuant to 28 U.S.C. §1391 because a substantial part of the events or omissions giving rise to this action took place in this District and Division, the Defendants are all domiciled in this District and Division, Mavidea's principal place of business is in this District and Division, and the harm is felt in this District and Division.

**Answer:** **Defendant admits that venue is proper in this District and Division pursuant to 28 U.S.C. §1391 because a substantial part of the events or omissions giving rise to this action took place in this District and Division, the Defendants are all domiciled in this District and Division, Mavidea's principal place of business is in this District and Division.**

**Defendant denies the remaining allegations of paragraph 5 of Plaintiff's Verified Amended Complaint.**

<u>THE PARTIES</u>

6.      Mavidea is an Illinois limited liability company with its principal place of business located at 14170 Carole Dr., Bloomington, Illinois. Mavidea is, and at all times mentioned was, authorized to conduct business in the State of Illinois.

**Answer:      Defendant admits the allegations of paragraph 6 of Plaintiff's Verified Amended Complaint.**

7.      Jamie Warmbir is an individual residing at 22 Pendleton Way, Bloomington, Illinois.

**Answer:      Defendant admits the allegations of paragraph 7 of Plaintiff's Verified Amended Complaint.**

8.      Charlotte Warmbir is an individual residing at 22 Pendleton Way, Bloomington, Illinois and is the spouse of Jamie Warmbir.

**Answer:      Defendant admits the allegations of paragraph 8 of Plaintiff's Verified Amended Complaint.**

9.      Warmbir IT is an Illinois limited liability company with its principal place of business in Bloomington, Illinois.

**Answer:      Defendant admits the allegations of paragraph 9 of Plaintiff's Verified Amended Complaint.**

<u>FACTS</u>

10.     Mavidea was formed on April 18, 2007 in the State of Illinois as a domestic manager-managed limited liability company. Mavidea is engaged in the business of IT Solutions, software development, digital marketing and website design.

**Answer:** **Defendant admits the allegations of paragraph 10 of Plaintiff's Verified Amended Complaint.**

11.     Warmbir Technology Incorporated, an entity wholly owned by Jamie Warmbir, was an original member of Mavidea. Jamie Warmbir was originally named as a manager of Mavidea and served as a manager until February 10, 2020.

**Answer:** **Defendant admits the allegations of paragraph 11 of Plaintiff's Verified Amended Complaint.**

12.     From inception until February 10, 2020, Jamie Warmbir served in a role where he regularly authorized and signed documents on behalf of Mavidea.

**Answer:** **Defendant admits the allegations of paragraph 12 of Plaintiff's Verified Amended Complaint.**

13.     From inception until February 10, 2020, Jamie Warmbir led the Information Technology business at Mavidea and supervised its employees.

**Answer:** **Defendant admits the allegations of paragraph 13 of Plaintiff's Verified Amended Complaint.**

14.     Jamie Warmbir provided these services on a full-time basis and was the highest paid individual with Mavidea as of February 10, 2020.

**Answer:** **Defendant admits that he provided services on a full-time basis. Further answering, Defendant lacks sufficient knowledge to admit or deny the remaining allegations of paragraph 14 of Plaintiff's Verified Amended Complaint.**

Mavidea's Operating Agreement

15.     In 2018 and 2019, the members and managers of Mavidea undertook a deliberative process to amend their operating agreement, which resulted in a fully executed agreement dated

April 17, 2019 (attached hereto as Exhibit "A" and is referred to as "Operating Agreement" herein).

**Answer:     Defendant admits the allegations of paragraph 15 of Plaintiff's Verified Amended Complaint.**

16.     The Operating Agreement under paragraph 1.8 held "The Members shall use the Company's credit and assets solely for the benefit of the Company."

**Answer:     Defendant admits that paragraph 16 of Plaintiff's Verified Amended Complaint quotes a portion of Paragraph 1.8 of the Operating Agreement. Defendant denies the remaining allegations of paragraph 16 of Plaintiff's Verified Amended Complaint and demands strict proof thereof.**

17.     The Operating Agreement holds, in part, under Paragraph 5.3:

5.3.     Restrictions on the Authority of Managers.    Without the consent of the Members, the Managers shall not have the authority to:

(i.)     do any act in contravention of this Agreement;…

(ii.)     do any act which would make it impossible to carry on the ordinary business of the Company, except as otherwise provided in this Agreement;…

(iv.)     possess Property, or assign rights in specific Property, for other than a Company purpose;

**Answer:     Defendant admits that paragraph 17 of Plaintiff's Verified Amended Complaint quotes a portion of Paragraph 5.3 of the Operating Agreement. Defendant denies the remaining allegations of paragraph 17 of Plaintiff's Verified Amended Complaint and demands strict proof thereof.**

18.     The Operating Agreement under Paragraph 5.4 imposed the following obligations on Managers:

5.4 <u>Duties and Obligations of the Managers</u>

> (a) The Managers shall take all actions on behalf of the Company which may be necessary or appropriate… (ii) for the accomplishment of the Company's purposes, including the acquisition, development, maintenance, preservation, and operation of Property in accordance with the provisions of this Agreement, the Act, and all other applicable laws and regulations…

> (c) The Managers shall conduct the affairs of the Company in the best interests of the Company and of the Members, including the safekeeping and use of all of the Property for the exclusive benefit of the Company.

**Answer:** **Defendant admits that paragraph 18 of Plaintiff's Verified Amended Complaint quotes a portion of Paragraph 5.4 of the Operating Agreement. Defendant denies the remaining allegations of paragraph 18 of Plaintiff's Verified Amended Complaint and demands strict proof thereof.**

19. Paragraph 1.9 of the Operating Agreement defined "Property" to mean: "… all real and personal property acquired by the Company and any improvements thereto, and shall include both tangible and intangible property."

**Answer:** **Defendant admits the allegations of paragraph 19 of Plaintiff's Verified Amended Complaint.**

20. Some of the members/managers were members of other entrepreneurial ventures and wanted the operating agreement to reflect that their participation in such ventures would not be viewed as a breach of their fiduciary duty. Thus, while the Operating Agreement required any Manager to use any intangible property created or acquired by Mavidea for the "<u>exclusive benefit of the Company</u>," Paragraph 1.7 indicated that a Manager would not be required to offer the stock of any new independent or competing venture back to Mavidea <u>providing</u> the manager/member respected the intangible property interests of Mavidea under Section 5.3.

**Answer:** **Defendant denies the allegations of paragraph 20 of Plaintiff's Verified Amended Complaint and affirmatively states that Paragraph 1.7 of the Operating Agreement speaks for itself.**

21.    The Operating Agreement did not further modify the statutory or common law fiduciary duties of the members or managers. Thus, any fiduciary duty imposed by statute or common law that was not modified by Paragraph 1.7 remained in full effect.

**Answer:** **The allegations of paragraph 21 of Plaintiff's Verified Amended Complaint constitute legal conclusions and therefore Defendant neither admits nor denies same but demands strict proof thereof. To the extent an answer is required to the allegations of paragraph 21 of Plaintiff's Verified Amended Complaint, Defendant denies each allegation of paragraph 21 of Plaintiff's Verified Amended and demands strict proof thereof.**

22.    Paragraph 10.9 of the Operating Agreement indicated that each Member irrevocably waives any right to partition any of the company's Property.

**Answer:** **Defendant admits the allegations of paragraph 22 of Plaintiff's Verified Amended Complaint.**

Mavidea's Business

23.    Mavidea has provided Information Technology services since its inception, although the business model has changed over time. At all times relevant herein, Mavidea used a "managed services" business model where Mavidea would serve businesses throughout central Illinois by entering into a contract with them. The customer would pay a monthly base fee which would include a "scope" of services that Mavidea would provide. In most cases, Mavidea would undergo a significant amount of upfront labor to understand the customer's existing computer system and implement the software needed to properly service the contract, with the goal being

that the monthly fee later in the contract would cover these initial expenses.

**Answer:** **Defendant admits that Mavidea has provided Information Technology services since its inception, although the business model has changed over time. Defendant admits that Mavidea used a "managed services" business model where Mavidea would serve businesses throughout central Illinois by entering into a contract with them. The customer would pay a monthly base fee which would include a "scope" of services that Mavidea would provide. Defendant denies the remaining allegations of paragraph 23 of Plaintiff's Verified Amended Complaint and demands strict proof thereof.**

24.     Locating customers that are in need of essentially outsourcing their IT department is a difficult task. Mavidea needs to identify businesses that do not have a full time IT person or department, but have significant enough IT needs to require regular servicing. Mavidea also requires that the customer's business culture and integrity be consistent with their own. As a result, Mavidea employs a full-time employee to call small businesses all over Central Illinois just to find prospects that meet Mavidea's selection criteria.

**Answer:** **Defendant admits that, as of the date he resigned as Manager of Mavidea, Mavidea employed a full-time employee to call small businesses all over Central Illinois to find prospects. Defendant denies the remaining allegations of paragraph 24 of Plaintiff's Verified Amended Complaint and demands strict proof thereof.**

25.     In 2019, Mavidea made 17,516 phone calls to prospective customers, which led to 1,635 conversations and 87 first time meeting appointments being accepted. Of those 87 meeting appointments, Mavidea further investigated the prospects and completed 57 of those appointments. Out of the 57 meetings, 11 of the prospects were added as potential clients that Mavidea would like to do business with. Of those 11 potential clients, Mavidea actually signed contracts with three

in the 2019 fiscal year. Mavidea maintains a confidential detailed database of the information it has learned through this sales cycle.

**Answer:** **Defendant admits that Mavidea maintained a database of the information pertaining to its sales cycle. Defendant denies the remaining allegations of paragraph 25 of Plaintiff's Verified Amended Complaint and demands strict proof thereof.**

26. As the director of the IT Department, Jamie Warmbir, at all times, relevant herein, had access to this database and would be the individual that would qualify and meet with those in the final stages of the sales cycle. Jamie Warmbir would also negotiate and sign the contracts with these businesses. As a result of his role, he had access to critical proprietary information concerning the identity, pricing terms, contract lengths and services included for each customer of Mavidea. He also had access to and regularly reviewed the proprietary underlying data concerning how much labor and costs had been expended for each contract. As a result, he understood the profitability of each customer and the cost it would take to service each contract.

**Answer:** **Defendant admits that Jamie Warmbir, had access to the database pertaining to Mavidea's sales cycle. Defendant admits that Jamie Warmbir would have qualified and met with prospective clients in the final stages of the sales cycle during the later portion of the time in which he served as Manager of Mavidea but denies that he did so for the entirety of his tenure as Manager. Defendant admits that Jamie Warmbir, had access to information concerning the identity, pricing terms, contract lengths and services for each customer of Mavidea as well as the data concerning labor and cost pertaining to each customer of Mavidea. Defendant admits that Jamie Warmbir periodically reviewed the labor involved with servicing Mavidea's IT clients. Defendant denies that the information identified in paragraph 26 is proprietary. Defendant denies the remaining allegations of**

**paragraph 26 of Plaintiff's Verified Amended Complaint and demands strict proof thereof.**

<u>Jamie Warmbir's Actions</u>

27. At various times in 2019, the other managers of Mavidea noticed that Jamie Warmbir appeared to be of general discontent. In October, 2019, the other managers had a meeting with Jamie Warmbir to discuss the discontentment and to see what improvement could be made. From these discussions, the other managers indicated to Jamie Wambir that they did not have an interest in selling the IT division of Mavidea to him, but that they would be open to discuss other possibilities of a departure for him if he desired. Jamie Warmbir's wife, Charlotte Warmbir, discussed with the managers some of the reason for discontentment. On October 14, 2019, Jamie Warmbir tendered a "Statement of Contentment" to the other managers affirming that he wanted to continue to be on the team.

**Answer:     Defendant denies the allegations of paragraph 27 of Plaintiff's Verified Amended Complaint and demands strict proof thereof.**

28.     Shortly thereafter, however, Jamie Warmbir devised a scheme to forcibly take the IT Division from Mavidea by taking Mavidea's clients and employees in the event the managers of Mavidea would not sell it to him for the price he dictated.

**Answer:     Defendant denies the allegations of paragraph 28 of Plaintiff's Verified Amended Complaint and demands strict proof thereof.**

29.     Jamie Warmbir concealed these intentions for months from the other Managers which enabled him a) learn additional confidential information from the company and its managers, b) further exploit the confidential information / Property of the Plaintiff, c) obtain an appraisal of Mavidea's IT business, d) meet with his attorney and other advisors to prepare for his new venture, e) put himself in a position with the employees of Mavidea to convert them to his

10

new venture, f) identify and cultivate prospective clients that could be signed up by his new venture, g) attend conferences paid for by the Plaintiff where he could learn new methods and ways to differentiate his new company from Mavidea and h) take other actions to prepare for the start of his new venture that are still being investigated.

**Answer:** **Defendant admits that Jamie Warmbir obtained an appraisal of Mavidea's IT business. Defendant denies the remaining allegations of paragraph 29 of Plaintiff's Verified Amended Complaint and demands strict proof thereof.**

30.     Additionally, Jamie Warmbir failed to follow the standard practice of Mavidea by either a) failing to procure non-competition agreements or b) allowing the destruction of existing non- competition agreements with the two employees under his supervision that he desired to come to his new business.

**Answer:** **Defendant denies the allegations of paragraph 30 of Plaintiff's Verified Amended Complaint and demands strict proof thereof.**

31.     To the information and belief of the Plaintiff, Jamie Warmbir memorized or otherwise recorded the Plaintiff's customer list that pertained to the IT Department, along with contract term dates, pricing data, and other customer information that was confidential information, trade secrets, and Property of the Plaintiff.

**Answer:** **Defendant admits that he has a record of the names of Mavidea's IT customers as of the date that he resigned as Manager of Mavidea. Defendant denies the remaining allegations of paragraph 31 of Plaintiff's Verified Amended Complaint and demands strict proof thereof. Further answering, Defendant affirmatively states that the information identified in paragraph 31 of Plaintiff's Verified Amended Complaint does not constitute trade secrets.**

32.     To the information and belief of the Plaintiff, Jamie Warmbir memorized or otherwise recorded the Plaintiff's prospective customer list that pertained to the IT Department along with proposed pricing data, and other prospective customer information that was the confidential information, trade secrets, and Property of the Plaintiff.

**Answer:     Defendant denies the allegations of paragraph 32 of Plaintiff's Verified Amended Complaint and demands strict proof thereof. Further answering, Defendant affirmatively states that the information identified in paragraph 32 of Plaintiff's Verified Amended Complaint does not constitute trade secrets.**

33.     Jamie Warmbir allowed appointments to be set up with prospective or existing customers past his resignation date in which he knew he could take advantage of after leaving. These appointments were confidential information, trade secrets, and Property of the Plaintiff.

**Answer:     Defendant denies the allegations of paragraph 33 of Plaintiff's Verified Amended Complaint and demands strict proof thereof. Further answering, Defendant affirmatively states that the information identified in paragraph 33 of Plaintiff's Verified Amended Complaint does not constitute trade secrets.**

34.     To the information and belief of the Plaintiff, Jamie Warmbir recruited his spouse, Charlotte Warmbir, to assist him in making preparations for his new business.

**Answer:     Defendant denies the allegations of paragraph 34 of Plaintiff's Verified Amended Complaint and demands strict proof thereof.**

35.     Jamie Warmbir accumulated additional contacts and proprietary company information on the phone that he wrongfully intended to take with him after leaving Mavidea.

**Answer:     Defendant denies the allegations of paragraph 35 of Plaintiff's Verified Amended Complaint and demands strict proof thereof.**

36.   Jamie Warmbir delayed the signing of new clients so that he would not be encumbered by a Mavidea contract when starting his new venture.

**Answer:**     **Defendant denies the allegations of paragraph 36 of Plaintiff's Verified Amended Complaint and demands strict proof thereof.**

37.   Jamie Warmbir forwarded the confidential resume and an email dialogue with a prospective employee to his own personal email account so that he could utilize the information for his new company.

**Answer:**     **Defendant admits that he forwarded an email dialogue with a prospective employee of Mavidea to his personal email account. Defendant denies the remaining allegations of paragraph 37 of Plaintiff's Verified Amended Complaint and demands strict proof thereof.**

38.   Without permission, Jamie Warmbir released Plaintiff's confidential financial information to an appraiser for his own purposes in furtherance of the scheme.

**Answer:**     **Defendant denies the allegations of paragraph 38 of Plaintiff's Verified Amended Complaint and demands strict proof thereof.**

39.   On February 10, 2020 Jamie Warmbir set his plan into action, relinquishing his authority to act as a manager/agent of Mavidea. He informed the remaining managers that they had the next four business days to either 1) sell the IT Division to him for the price that he demanded, or 2) that he would take the customers and employees without paying them anything for it. He informed them that his new competing business was ready to service customers immediately after any denial to sell it to him at his price.

**Answer:**     **Defendant admits that Jamie Warmbir resigned as a Manager of Mavidea on February 10, 2020. Defendant denies the remaining allegations of paragraph 39**

**of Plaintiff's Verified Amended Complaint and demands strict proof thereof.**

40.     On February 14, 2020, the remaining managers informed Jamie Warmbir that the Company would not be accepting his offer and that he would need to tender any of Mavidea's Property back to the Company on that day.

**Answer:       Defendant admits the allegations of paragraph 40 of Plaintiff's Verified Amended Complaint.**

41.     After learning that the Company wanted his phone and phone number back, he secretly contacted Verizon and posed as an Agent/Manager of Mavidea, even though he had already resigned such authority. He requested that Verizon transfer the telephone number from the account that Mavidea owned to a personal account that only he was in control of.

**Answer:       Defendant denies the allegations of paragraph 41 of Plaintiff's Verified Amended Complaint and demands strict proof thereof. Further answering Defendant affirmatively states that the phone and phone number referenced in paragraph 41 of Plaintiff's Verified Amended Complaint were owned by him.**

42.     The telephone number that Jamie Warmbir used as his cell phone number was the point of contact for many customers and prospective customers of the IT Division. By converting the phone number to his own use, this has enabled Jamie Warmbir to wrongfully receive inquiries from the Company's customers, prospective customers, employees, and other third parties to divert Company Property for his own use in furtherance of his original scheme.

**Answer:       Defendant denies the allegations of paragraph 42 of Plaintiff's Verified Amended Complaint and demands strict proof thereof.**

43.     On the next business day, Jamie Warmbir announced that he and his wife were opening a new business called "Warmbir IT Solutions, LLC" and that he welcomed new clients.

**Answer:** **Defendant denies the allegations of paragraph 43 of Plaintiff's Verified Amended Complaint and demands strict proof thereof.**

44. On February 21, 2020, the same week he announced the opening of his new venture, Jamie Warmbir requested that Elizabeth Fornero, a Mavidea employee that he formerly supervised, contact all of the other employees of the Mavidea IT Department and have them come to his house that evening for a meeting in which he would provide pizza and beverages.

**Answer:** **Defendant admits that he invited Elizabeth Fornero to come to his house for pizza and beverage. Defendant further admits that he asked Elizabeth Fornero to extend the invitation to the teammates. Further answering, Defendant denies the remaining allegations of paragraph 44 of Plaintiff's Verified Amended Complaint and demands strict proof thereof.**

45. Jamie Warmbir created a scheme whereby he would create positions at his new company for each of the employees of the Mavidea IT Department, with the exception of on individual who was retiring. For each of the positions, Jamie Warmbir would create a job description that was tailored specifically for the employee he was trying to move over to his company. Jamie Warmbir would then post a solicitation for that job in which each employee was then to "apply" for the position. However, these solicitations were merely a ruse to make it appear that a legitimate job search process was occurring, when in actuality Jamie Warmbir knew these posts were to specifically solicit the team that he supervised at Mavidea.

**Answer:** **Defendant denies the allegations of paragraph 45 of Plaintiff's Verified Amended Complaint and demands strict proof thereof.**

46. Jamie Warmbir immediately undertook an effort to have the employees he supervised at Mavidea terminate their employment and come to his new venture. He was able to

shortcut his search for employees and enhance any offers to them by using the names, backgrounds, salary history. By short-cutting the normal search, it is believed his intentions were to quickly dismantle Mavidea's ability to provide service to its customers, enhancing his ability to pitch to Mavidea's customers that they would be better off terminating their contract and signing up with his business.

**Answer:** **Defendant denies the allegations of paragraph 46 of Plaintiff's Verified Amended Complaint and demands strict proof thereof.**

47. On February 22, 2020, the day after the pizza party, Mavidea employee, Eric Even, sent Jamie Warmbir a message with his resume "applying" for the position that was created for him. Within a couple of weeks, Jamie Warmbir had hired the two employees that he had either 1) failed to obtain a non-competition agreement for or 2) allowed for a non-competition agreement to be destroyed while he supervised them.

**Answer:** **Defendant admit that Eric Even sent a message with his resume to Jamie Warmbir to apply for a position with Warmbir It Solutions, LLC on February 22, 2020. Defendant admits that Warmbir IT Solutions, LLC hired Eric Even and Michael Cluney within a couple of weeks. Further answering, Defendant denies the remaining allegations of paragraph 47 of Plaintiff's Verified Amended Complaint and demands strict proof thereof.**

48. Jamie Warmbir utilized the services of a third party to reach out and contact the salesperson of Mavidea to determine whether she would be willing to leave Mavidea and come to his new company.

**Answer:** **Defendant admits that a colleague of Kimmy Mascari initiated a discussion with him regarding both Warmbir IT Solutions, LLC and Kimmy Mascari.**

**Defendant further admits that he informed Kimmy Mascari's colleague that he would like to speak with her. Further answering, Defendant denies the remaining allegations of paragraph 48 of Plaintiff's Verified Amended Complaint and demands strict proof thereof.**

49.     Shortly thereafter, he encouraged another Mavidea employee, Chris Boyer, to cease employment at Mavidea and join his competing company. Mr. Boyer gave notice to Mavidea that he was leaving for this purpose on March 26, 2020. Jamie Warmbir had prepared and executed the non-competition agreement on behalf of Mavidea with this employee on September 23, 2019, fully knowing that said contract contained the following provisions:

> 7(d) Employee shall not, following the termination of his/her employment with Mavidea, either directly or indirectly, or by action in concert with others, either for Employee's own benefit or for the benefit of any other person or entity:
>
> (i)  Make known to any person the names, address or telephone numbers or any of the client candidates, clients, projects, contracts, designs, specifications or plans of Mavidea or any other Trade Secrets and/or Confidential Information pertaining to them;
>
> (ii) For a period of twelve (12) months following the termination of Employee's employment with  Mavidea Technology Group, LLC, call on, solicit, divert, interfere with or take away, or attempt to call on, solicit, divert, interfere with or take away any of the projects, clients, client candidates, employees, employee candidates, or consultants of Mavidea, including without limitation all those clients, client candidates, employees, employee candidates, consultants and/or projects with whom Employee became acquainted during his/her employment with Mavidea, either for Employee's own benefit or for the benefit of any other person or entity;
>
> (iii)Induce in any way, directly or indirectly, Mavidea's employees and/or persons working with and/or contracting with Mavidea, to disclose Mavidea's Trade Secrets and/or Confidential Information to any person;
>
> (iv)     For a period of twelve (12) months following the termination of Employee's employment with Mavidea, hire or take away, or attempt to hire or take away, any of Mavidea's employees, and/or independent contractors, and/or persons working with and/or contracting with Mavidea; and
>
> (v) For a period of twelve (12) months following the termination of Employee's employment with Mavidea, induce or influence (or seek to induce or influence) any person who is engaged (as an employee, agent, independent contractor, or

otherwise) by Mavidea to terminate his or her employment or engagement or to breach their duties or obligations owed to Mavidea

(e) For the duration of this Agreement, or for a period of twelve (12) months following the termination of Employee's employment with Mavidea, Employee shall not, directly or indirectly, either as an employee, employer, consultant, agent, principal, partner, stockholder, corporate officer, director or in any other individual or representative capacity, engage or participate in any business that is in competition in any manner whatsoever with the business of Mavidea, without the prior written consent of the Management…"

**Answer:** **Defendant denies the allegations of paragraph 49 of Plaintiff's Verified Amended Complaint and demands strict proof thereof.**

50.     Similarly, Jamie Warmbir then hired two additional employees, Elizabeth Fornero and Matthew Reichert, who also had similar non-competition agreements with Mavidea that Jamie Warmbir had executed as a Manager of Mavidea.

**Answer:** **Defendant admits that Warmbir IT Solutions, LLC hired Elizabeth Fornero and Matthew Reichert and that Elizabeth Fornero and Matthew Reichert also had non-competition agreements with Mavidiea that Jamie Warmbir had executed as a Manager of Mavidea. Further answering, Defendant denies the remaining allegations of paragraph 50 of Plaintiff's Verified Amended Complaint and demands strict proof thereof.**

51.     Each employee that terminated their employment with Mavidea and became employed by Warmbir IT had specialized skills and knowledge. Such skills and knowledge included the customers' specific computer system architecture, programs and processes utilized by each client. These skills and knowledge took an large amount of Mavidea's time and financial resources to develop, but gave the company a significant competitive advantage.

**Answer:** **Defendant denies the allegations of paragraph 51 of Plaintiff's Verified Amended Complaint and demands strict proof thereof.**

52.     Jamie Warmbir immediately upon opening his business undertook an effort, using the customer names, backgrounds, contract terms, pricing data and other customer information, to have Mavidea's customers terminate their contracts with Mavidea and sign new contracts at his new venture. In order to encourage them to terminate their contract with Mavidea, he commonly used the pitch that the employees who knew how to service their account were now employed by him and that Mavidea no longer had the ability to effectively and efficiently provide them services.

**Answer:        Defendant denies the allegations of paragraph 52 of Plaintiff's Verified Amended Complaint and demands strict proof thereof.**

53.     Within a few short weeks, Jamie Warmbir's efforts had resulted in eleven contract terminations with Mavidea.  In many cases, he provided them with a script they should use to terminate their contract with Mavidea and gave them specific advice on when and how they should terminate.  Attached as Exhibit "C" and incorporated herein is one such dialogue where Jamie Warmbir recommended specific action based on their contract with Mavidea.  The contracts that were terminated had been executed by Jamie Warmbir on behalf of Mavidea while he was a Manager.

**Answer:        Defendant admits that certain customers of Mavidea terminated their contracts with Mavidea and became clients of Warmbir IT Solutions, LLC.  Defendant further admits that in some cases he offered suggestions as to language that could be used to terminate a customer's contract with Mavidea.  Defendant admits that Exhibit "C" speaks for itself. Defendant admits that some of the contracts that were terminated had been executed by him as a Manager. Further answering, Defendant denies the remaining allegations of paragraph 53 of Plaintiff's Verified Amended Complaint and demands strict proof thereof.**

54. The legal advice given to Mavidea customers on how they should terminate their contract constituted the practice of law without a law license.

**Answer: The allegations of paragraph 54 of Plaintiff's Verified Amended Complaint constitute legal conclusions and therefore Defendant neither admits nor denies same but demands strict proof thereof. To the extent an answer is required to the allegations of paragraph 54 of Plaintiff's Verified Amended Complaint, Defendant denies each allegation of paragraph 54 of Plaintiff's Verified Amended Complaint and demands strict proof thereof.**

55. Jamie Warmbir immediately undertook an effort, using the prospective customer names, backgrounds, prospective pricing data and other customer information to have Mavidea's prospective customers come to sign contracts with him instead of Mavidea.

**Answer: Defendant denies the allegations of paragraph 55 of Plaintiff's Verified Amended Complaint and demands strict proof thereof.**

56. Within a few short weeks, Jamie Warmbir's efforts had resulted in at least one prospective customer agreeing to do work with his company instead of Mavidea.

**Answer: Defendant denies the allegations of paragraph 56 of Plaintiff's Verified Amended Complaint and demands strict proof thereof.**

57. Jamie Warmbir utilized the appointments and engagements set for him while at Mavidea to convert these customers and prospective customers to his own business.

**Answer: Defendant denies the allegations of paragraph 57 of Plaintiff's Verified Amended Complaint and demands strict proof thereof.**

58. In his attempt to convert clients, Jamie Warmbir used falsehoods about Mavidea, such as "At Mavidea, IT is not a priority compared to other projects."

**Answer:** Defendant denies the allegations of paragraph 58 of Plaintiff's Verified Amended Complaint and demands strict proof thereof.

59. On or about March 11, 220, Mavidea's attorney sent Jamie Warmbir's attorney a cease and desist letter that also demanded they preserve all evidence (said letter is attached hereto as Exhibit "B").

**Answer:** Defendant admits the allegations of paragraph 59 of Plaintiff's Verified Amended Complaint.

60. On or about March 16, 2020, Jamie Warmbir's attorney tendered a response labeled "For Settlement Purposes Only" which effectively rejected all of the Plaintiff's assertions and did not contain any proposal to settle the matter. The foregoing wrongful efforts have continued without any pause.

**Answer:** Defendant admits that on or about March 16, 2020, Jamie Warmbir's attorney tendered a response labeled "For Settlement Purposes Only" which effectively rejected all of the Plaintiff's assertions and did not contain any proposal to settle the matter. Defendant denies the remaining allegations of paragraph 60 of Plaintiff's Verified Amended Complaint and demands strict proof thereof.

<u>COUNT I</u>

<u>VIOLATION OF THE FEDERAL DEFEND TRADE SECRETS ACT AGAINST JAMIE WARMBIR AND WARMBIR IT SOLUTIONS, LLC</u>

61. Mavidea repeats and realleges each and every allegation contained in Paragraphs 1 through 60 of the Complaint as if set forth fully herein.

**Answer:** Defendant repeats and realleges his answers to paragraphs 1-60 as and for his answers to paragraphs 61 of Count 1 of Plaintiff's Verified Amended Complaint.

62. The Defend Trade Secrets Act (18 U.S.C. §1832) which amended the Economic

Espionage Act to add a federal civil cause of action, among other things, defines "trade secret" to include all forms and types of financial, business or economic information, including patterns, plans, compilations, methods, techniques, processes, procedures or programs, if (A) the owner thereof has taken reasonable measures to keep such information secret, and (B) the information derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable through proper means by, the public.

**Answer:** **Defendant admits the allegations of paragraph 62 of Plaintiff's Verified Amended Complaint.**

63. During the course of his affiliation with Mavidea, Jamie Warmbir was provided access to all of Mavidea's trade secrets, as described herein.

**Answer:** **Defendant denies the allegations of paragraph 63 of Plaintiff's Verified Amended Complaint and demands strict proof thereof.**

64. Such trade secrets are developed and maintained by Mavidea at great time, cost and expense to Mavidea, and are maintained on password protected networks accessible only by certain Mavidea employees with need to use such information on the Company's behalf.

**Answer:** **Defendant denies the allegations of paragraph 64 of Plaintiff's Verified Amended Complaint and demands strict proof thereof.**

65. Mavidea's trade secrets are not available to the general public and are closely guarded by Mavidea. Mavidea keeps such information strictly confidential in order to maintain a competitive advantage.

**Answer:** **Defendant denies the allegations of paragraph 65 of Plaintiff's Verified Amended Complaint and demands strict proof thereof.**

66. Mavidea derives independent economic value from the trade secrets and

confidential information that were entrusted to Jamie Warmbir; these secrets are not generally known or readily ascertainable by proper means by other persons who can obtain economic value from their disclosure and use, and the information is the subject of significant efforts to maintain its secrecy.

**Answer:** **Defendant denies the allegations of paragraph 66 of Plaintiff's Verified Amended Complaint and demands strict proof thereof.**

67. Mavidea's trade secrets, including the information identified herein, are trade secrets under the DTSA, 18 U.S.C. §1832, et. seq., because Mavidea derives independent economic value from this information not being generally known to the public, the information is not readily ascertainable by proper means by persons who could obtain economic value from its disclosure or use, and the information is the subject of reasonable efforts to maintain its secrecy.

**Answer:** **Defendant denies the allegations of paragraph 67 of Plaintiff's Verified Amended Complaint and demands strict proof thereof.**

68. On information and belief, Jamie Warmbir acquired Mavidea's trade secrets by improper means and without authorization. On information and belief, Jamie Warmbir has failed to return or destroy Mavidea's trade secrets and are using or disclosing such trade secrets in connection with Jamie Warmbir's efforts to start a competitive business, in violation of Mavidea's Operating Agreement regarding the protection of Mavidea's Property.

**Answer:** **Defendant denies the allegations of paragraph 68 of Plaintiff's Verified Amended Complaint and demands strict proof thereof.**

69. On information and belief, Jamie Warmbir has used or disclosed and is intending to further use and disclose, Mavidea's confidential information and trade secrets for his benefit.

**Answer:** **Defendant denies the allegations of paragraph 69 of Plaintiff's Verified**

**Amended Complaint and demands strict proof thereof.**

70. Jamie Warmbir knew or should have known that the information, as described herein, 1) is confidential, 2) was acquired under circumstances giving rise to a duty to maintain its secrecy or limit its use; 3) was developed or acquired by Mavidea at great expense and effort, 4) was maintained as confidential and is not generally available to the public and Mavidea's competitors, 5) would provide significant benefit to individuals seeking to compete with or harm Mavidea; and 6) is critical to Mavidea's ability to conduct its business successfully.

**Answer:** **Defendant denies the allegations of paragraph 70 of Plaintiff's Verified Amended Complaint and demands strict proof thereof.**

71. The information that Jamie Warmbir has misappropriated or threatens to misappropriate relates to Mavidea, which involve services that are utilized throughout interstate commerce.

**Answer:** **Defendant denies the allegations of paragraph 71 of Plaintiff's Verified Amended Complaint and demands strict proof thereof.**

72. Jamie Warmbir has been and will further be unjustly enriched by the misappropriation and/or threatened misappropriation of Mavidea's trade secrets and confidential information, and, unless restrained, will continue to threaten to use, actually use, divulge, inevitably disclose, acquire and/or otherwise misappropriate Mavidea's trade secrets and confidential information.

**Answer:** **Defendant denies the allegations of paragraph 72 of Plaintiff's Verified Amended Complaint and demands strict proof thereof.**

73. On information and belief, Jamie Warmbir's actual and/or threatened misappropriation has been willful and malicious.

**Answer:** **Defendant denies the allegations of paragraph 73 of Plaintiff's Verified Amended Complaint and demands strict proof thereof.**

74.     As a result of the threatened and/or actual misappropriation of Mavidea's trade secrets and confidential information, Mavidea has suffered and will continue to suffer with loss of business expectancies, customers, employees, its trade secrets and goodwill in amounts which may be impossible to determine, unless Jamie Warmbir is enjoined and restrained by order of the Court.

**Answer:** **Defendant denies the allegations of paragraph 74 of Plaintiff's Verified Amended Complaint and demands strict proof thereof.**

75.     In addition, Mavidea seeks, actual, incidental, compensatory, consequential damages, along with reasonable attorneys' fees and costs in an amount to be determined at trial.

**Answer:** **Defendant admits that Plaintiff seeks the requested relief but denies that it is entitled to receive such relief and further denies each and every remaining allegation of paragraph 75 of Plaintiff's Verified Amended Complaint and demands strict proof thereof.**

76.     As an actual and proximate result of Jamie Warmbir's conduct, as alleged in this claim for relief, Mavidea has suffered actual and consequential damages in the amount of at least $2,778,413.00.

**Answer:** **Defendant denies the allegations of paragraph 76 of Plaintiff's Verified Amended Complaint and demands strict proof thereof.**

77.     As a further proximate result of Jamie Warmbir's wrongful conduct and breach of the Operating Agreement, Mavidea has been injured, irreparably and otherwise, and is threatened with additional and ongoing injuries.

**Answer:** **Defendant denies the allegations of paragraph 77 of Plaintiff's Verified**

Amended Complaint and demands strict proof thereof.

78.     Warmbir IT Solutions, LLC is an alter ego of Jamie Warmbir that was purposefully set up by Jamie Warmbir to facilitate and undertake the wrongful actions described herein.

**Answer:       Defendant denies the allegations of paragraph 78 of Plaintiff's Verified Amended Complaint and demands strict proof thereof.**

79.     Warmbir IT Solutions, LLC should be liable and enjoined from continuing any of these activities.

**Answer:       Defendant denies the allegations of paragraph 79 of Plaintiff's Verified Amended Complaint and demands strict proof thereof.**

WHEREFORE, Defendant, JAMIE WARMBIR, prays that Count I of Plaintiff's Verified Amended Complaint be stricken and dismissed with prejudice, and for such other and further relief as the Court deems equitable and just.

<u>**COUNT II**</u>

<u>**BREACH OF FIDUCIARY DUTY AGAINST JAMIE WARMBIR**</u>

80.     Mavidea repeats and realleges each and every allegation contained in Paragraphs 1 through 60 of the Complaint as if set forth fully herein.

**Answer:       Defendant repeats and realleges his answers to paragraphs 1-60 as and for his answers to paragraphs 80 of Count II of Plaintiff's Verified Amended Complaint.**

81.     Jamie Warmbir, as a Manager of Mavidea, owed a fiduciary duty to Mavidea and the other Members and Managers of Mavidea.

**Answer:       The allegations of paragraph 81 of Plaintiff's Verified Amended Complaint constitute legal conclusions and therefore Defendant neither admits nor denies same but demands strict proof thereof. To the extent an answer is required to the allegations**

of paragraph 81 of Plaintiff's Verified Amended Complaint, Defendant denies each allegation of paragraph 81 of Plaintiff's Verified Amended Complaint and demands strict proof thereof.

82. Such fiduciary duties exist both before and after Jamie Warmbir's departure from the Company.

**Answer:** **The allegations of paragraph 82 of Plaintiff's Verified Amended Complaint constitute legal conclusions and therefore Defendant neither admits nor denies same but demands strict proof thereof. To the extent an answer is required to the allegations of paragraph 82 of Plaintiff's Verified Amended Complaint, Defendant denies each allegation of paragraph 82 and demands strict proof thereof.**

83. Jamie Warmbir breached his fiduciary duties to Mavidea prior to his resignation by:

A) After making the decision to leave Mavidea, he concealed his intentions from the other Managers which enabled him to a) learn additional confidential information from the company and its managers, b) further exploit the Property of the Plaintiff, c) obtain an appraisal of Mavidea's IT business, d) meet with his attorney and other advisors to prepare for his new venture, e) put himself in a position with the employees of the company to convert them to his new venture, f) identify and cultivate prospective clients that could be signed up by his new venture, and g) attend conferences paid for by the Plaintiff where he could learn new methods and ways to differentiate his new company from Mavidea, and h) take other actions to prepare for the start of his new venture that are still being investigated.

B) Failing to follow the standard practice of Mavidea by either a) failing to procure non-competition agreements or b) allowing the destruction of existing non-competition

agreements with the two employees under his supervision that he most desired to come to his new business.

C)      To the information and belief of the Plaintiff, memorizing or otherwise recording the Plaintiff's customer list, contract term dates, pricing data, and other customer information.

D)      To the information and belief of the Plaintiff, memorizing or otherwise recording the Plaintiff's prospective customer list, proposed pricing data, and other prospective customer information;

E)      Allowing appointments to be set up with prospective or existing customers past his resignation date in which he knew he could take advantage of after leaving;

F)      Recruiting his spouse, Charlotte Warmbir, to assist him in making preparations for his new business;

G)      Accumulate additional contacts and proprietary company information on the phone that he wrongfully intended to take with him after starting his competing business;

H)      Delay the signing of new clients so that he would not be encumbered by a Mavidea contract when starting his new venture,

I)      Forwarded the confidential resume and an email dialogue with a prospective employee to his own personal email account so that he could utilize the information for his new company;

J)      Withheld information learned at informational conferences so that his new company could have a competitive advantage against Mavidea;

K)      Released Mavidea's financial information to third parties without consent;

**Answer:      Defendant denies the allegations of paragraph 83 of Plaintiff's Verified**

Amended Complaint and demands strict proof thereof.

84.     All such actions were intentionally designed so that Jamie Warmbir could immediately have his business up and running after resigning as Manager, as well as give as little warning to Mavidea as possible that might enable to company to enact counter-measures to protect its intangible property.

**Answer:     Defendant denies the allegations of paragraph 84 of Plaintiff's Verified Amended Complaint and demands strict proof thereof.**

85.     Jamie Warmbir's fiduciary duties did not end at the time he resigned his position as Manager as most of the relationships Jamie Warmbir has with former employees and customers of Mavidea would not exist "but for" his prior management role at Mavidea. Jamie Warmbir's fiduciary duties to Mavidea continue to this day.

**Answer:     The allegations of paragraph 85 of Plaintiff's Verified Amended Complaint constitute legal conclusions and therefore Defendant neither admits nor denies same but demands strict proof thereof. To the extent an answer is required to the allegations of paragraph 85 of Plaintiff's Verified Amended Complaint, Defendant denies each allegation of paragraph 85 of Plaintiff's Verified Amended Complaint and demands strict proof thereof.**

86.     Jamie breached his fiduciary duties after leaving Mavidea by using the confidential information and Mavidea Property he obtained while at Mavidea:

A)     He immediately undertook an effort to have the employees he supervised at Mavidea terminate their employment and come to his new venture. He was able to shortcut his search for employees and enhance any offers to them by using the names, backgrounds, salary history. By short-cutting the normal search, it is believed his intentions were to quickly dismantle

Mavidea's ability to provide service to its customers, enhancing his ability to pitch to Mavidea's customers that they would be better off terminating their contract and signing up with his business;

B)      He immediately undertook an effort, using the customer names, backgrounds, contract terms, pricing data and other customer information, to have Mavidea's customers terminate their contracts with Mavidea and sign new contracts at his new venture;

C)      He immediately undertook an effort, using the prospective customer names, backgrounds, prospective pricing data and other customer information to have Mavidea's prospective customers come to sign contracts with him instead of Mavidea;

D)      He utilized the appointments and engagements set for him while at Mavidea to convert customers and prospective customers to his own business;

E.)      He used falsehoods, such as "At Mavidea, IT is not a priority compared to other things."

F.)      After resigning his manager position and being requested to turn his phone over to the company by the other managers, he wrongfully posed himself to be an agent of Mavidea and effectuated a transfer of the Company's telephone number to an account in his own name that Mavidea had no authority over;

G.)      To the information and belief of the Plaintiff, he assisted customers in terminating their contracts with the Plaintiff by giving them the language to use in their termination notice;

(H) He encouraged and directly caused a Mavidea employee to undertake an action that would knowingly be in violation of his employment agreement.

**Answer:      Defendant denies the allegations of paragraph 86 of Plaintiff's Verified**

**Amended Complaint and demands strict proof thereof.**

87.     These wrongful actions have caused the following damages to Mavidea:

A)     The Defendants have caused at least eleven customers to cancel their contracts with the Plaintiff;

B)     The Defendants have caused five employees to terminate their employment with the Plaintiff;

C)     The Defendants have caused the Plaintiffs to incur additional labor costs both on a short term and long term basis to mitigate the damages caused by Defendants' wrongful actions;

D)     The Defendants have caused the Plaintiffs to not receive prospective customer calls due to the theft of Plaintiff's phone number by the Defendant;

E)     The Plaintiff and its Managers/Members have lost business in other divisions of the Company due to the immediate actions and attention required to mitigate damages caused by the Defendants;

F)     The Plaintiff has had to reassign its Managers to tasks related to mitigating damages caused by the Defendants increasing its labor costs;

G)     The Plaintiff has lost a significant amount of money in its valuation as a going concern;

H)     The Plaintiff has had to institute this legal action to collect damages due to the wrongful refusal of the Defendant to pay the same. As a result, the Plaintiff has suffered a cost related to the time value of money at its applicable borrowing rate;

I)     The Plaintiff has been required to hire attorneys to prosecute this claim, as well as incur other costs related to the lawsuit;

J)      Additional Damages either unknown or still accumulating.

**Answer:**     **Defendant denies the allegations of paragraph 87 of Plaintiff's Verified Amended Complaint and demands strict proof thereof.**

88.     The Defendant's wrongful acts are characterized by wantonness, malice, oppression and other circumstances of aggravation. The pattern of conduct by the defendants were motivated by more than mere ignorance or oversight, but by personal gain.

**Answer:**     **Defendant denies the allegations of paragraph 88 of Plaintiff's Verified Amended Complaint and demands strict proof thereof.**

89.     As such, the Defendant should pay punitive damages to the Plaintiff as outlined in *Estate of Wernick*, 127 Ill.2d 61, 525 N.E.2d 876 (1989).

**Answer:**     **Defendant denies the allegations of paragraph 89 of Plaintiff's Verified Amended Complaint and demands strict proof thereof.**

WHEREFORE, Defendant, JAMIE WARMBIR, prays that Count II of Plaintiff's Complaint be stricken and dismissed with prejudice, and for such other and further relief as the Court deems equitable and just.

## COUNT III

### BREACH OF OPERATING AGREEMENT AGAINST JAMIE WARMBIR

90.     Mavidea repeats and realleges each and every allegation contained in Paragraphs 1 through 60 of the Complaint as if set forth fully herein.

**Answer:**     **Defendant repeats and realleges his answers to paragraphs 1-60 as and for his answers to paragraphs 90 of Count III of Plaintiff's Verified Amended Complaint.**

91.     Jamie Warmbir knowingly and voluntarily entered into the Operating Agreement. The Operating Agreement is a valid and enforceable contract.

Defendant admits that Jamie Warmbir knowingly and voluntarily entered into the Operating Agreement. The remaining allegations of paragraph 91 of Plaintiff's Verified Amended Complaint constitute legal conclusions and therefore Defendant neither admits nor denies same but demands strict proof thereof. To the extent an answer is required to the remaining allegations of paragraph 91 of Plaintiff's Verified Amended Complaint, Defendant denies each remaining allegation of paragraph 91 of Plaintiff's Verified Amended Complaint and demands strict proof thereof.

92. The Plaintiff has performed all conditions, covenants, promises and obligations required on its part to be performed in accordance with the Operating Agreement, except for any conditions and covenants for which performance was excused or prevented by the Defendant.

**Answer:** **Defendant denies the allegations of paragraph 92 of Plaintiff's Verified Amended Complaint and demands strict proof thereof.**

93. The definition of property in Paragraph 1.9 of the Operating Agreement includes any intangible property.

**Answer:** **Defendant admits the allegations of paragraph 93 of Plaintiff's Verified Amended Complaint.**

94. The inclusion of the broad term "intangible property" infers a much more expansive interpretation than the items covered by the Illinois Trade Secret Act or the Federal Defend Trade Secrets Act.

**Answer:** **Defendant denies the allegations of paragraph 94 of Plaintiff's Verified Amended Complaint and demands strict proof thereof.**

95. Black's Law Dictionary (11th ed. 2019) defines "Intangible Property" as property that lacks a physical existence. Examples include stock options and business goodwill."

**Answer:** **Defendant admits the allegations of paragraph 95 of Plaintiff's Verified Amended Complaint.**

96.     Thus, Property, as defined in the Operating Agreement, include such items as customer relationships, business goodwill, business know-how, employee relationships, customer and prospective customer lists and contracts, established processes, telephone numbers, contract terms, pricing and profitability data, and the other items referenced herein that Jamie Warmbir misappropriated for his own use.

**Answer:** **The allegations of paragraph 96 of Plaintiff's Verified Amended Complaint constitute legal conclusions and therefore Defendant neither admits nor denies same but demands strict proof thereof. To the extent an answer is required to the allegations of paragraph 96 of Plaintiff's Verified Amended Complaint, Defendant denies each allegation of paragraph 96 of Plaintiff's Verified Amended Complaint and demands strict proof thereof.**

97.     Paragraph 1.7 indicated that a Manager was only permitted to compete with Mavidea in the event the intangible property interests of Mavidea under Section 5.3 were respected.  If that did not occur, Paragraph 1.7 suggests that the offending Manager should tender the stock back to Mavidea of any new independent or competing venture, as well as account for its income and profits.

**Answer:** **Defendant denies the allegations of paragraph 97 of Plaintiff's Verified Amended Complaint and demands strict proof thereof.**

98.     The pre-separation and post-separation actions of Jamie Warmbir referenced herein are contrary to the terms of 1.8, 5.3 and 5.4 of the Operating Agreement.

**Answer:** **Defendant denies the allegations of paragraph 98 of Plaintiff's Verified**

Amended Complaint and demands strict proof thereof.

99.     As such, Jamie Warmbir is in breach of the operating Agreement.

**Answer:        Defendant denies the allegations of paragraph 99 of Plaintiff's Verified Amended Complaint and demands strict proof thereof.**

100.     As a further proximate result of Jamie Warmbir's wrongful conduct and breach of the Operating Agreement, Plaintiff has been injured, irreparably and otherwise, and is threatened with additional and ongoing injuries.

**Answer:        Defendant denies the allegations of paragraph 100 of Plaintiff's Verified Amended Complaint and demands strict proof thereof.**

WHEREFORE, Defendant, JAMIE WARMBIR, prays that Count III of Plaintiff's Complaint be stricken and dismissed with prejudice, and for such other and further relief as the Court deems equitable and just.

## COUNT IV

### CIVIL CONSPIRACY AGAINST CHARLOTTE WARMBIR

Count IV of Plaintiff's Verified Amended Complaint makes no allegations against Defendant, JAMIE WARMBIR, and therefore, Defendant, JAMIE WARMBIR makes no response to the same.

## COUNT V

### BREACH OF ILLINOIS TRADE SECRETS ACT AGAINST JAMIE WARMBIR AND WARMBIR IT SOLUTIONS, LLC

110.     Mavidea repeats and realleges each and every allegation contained in Paragraphs 1 through 60 of the Complaint as if set forth fully herein.

**Answer:        Defendant repeats and realleges his answers to paragraphs 1-60 as and**

**for his answers to paragraph 110 of Count V of Plaintiff's Verified Amended Complaint.**

111.    Jamie Warmbir acquired the trade secrets by improper means, namely misappropriating by copying/memorizing the trade secrets of Mavidea after his authority was terminated.

**Answer:    Defendant denies the allegations of paragraph 111 of Plaintiff's Verified Amended Complaint and demands strict proof thereof.**

112.    Warmbir IT Solutions, LLC also acquired the trade secrets referenced herein by improper means, namely by receiving the trade secrets from unauthorized party, Jamie Warmbir.

**Answer:    Defendant denies the allegations of paragraph 112 of Plaintiff's Verified Amended Complaint and demands strict proof thereof.**

113.    Jamie Warmbir and Warmbir IT Solutions, LLC used the information without the consent of the owner, Mavidea.

**Answer:    Defendant denies the allegations of paragraph 113 of Plaintiff's Verified Amended Complaint and demands strict proof thereof.**

114.    By using the information, Jamie Warmbir and Warmbir IT Solutions, LLC have caused injury to the Plaintiff. These wrongful actions have caused the following damages to Mavidea:

A)    The Defendants have caused at least eleven customers to cancel their contracts with the Plaintiff;

B)    The Defendants have caused five employees to terminate their employment with the Plaintiff;

C)    The Defendants have caused the Plaintiffs to incur additional labor costs both on a short term and long-term basis to mitigate the damages caused by Defendants' wrongful

actions;

D) The Defendants have caused the Plaintiffs to not receive prospective customer calls due to the acquisition of Plaintiff's phone number by the Defendant;

E) The Plaintiff and its Managers/Members have lost business other divisions of the Company due to the immediate actions and attention required to mitigate damages caused by the Defendants;

F) The Plaintiff has had to reassign its Managers to tasks related to mitigating damages caused by the Defendants increasing its labor costs;

G) The Plaintiff has lost a significant amount of money in its valuation as a going concern;

H) The Plaintiff has had to institute this legal action to collect damages due to the wrongful refusal of the Defendant to pay the same. As a result, the Plaintiff has suffered a cost related to the time value of money at its applicable borrowing rate;

I) The Plaintiff has been required to hire attorneys to prosecute this claim, as well as incur other costs related to the lawsuit;

J) Additional Damages either unknown or still accumulating.

**Answer:** **Defendant denies the allegations of paragraph 114 of Plaintiff's Verified Amended Complaint and demands strict proof thereof.**

115. The Defendant's wrongful acts are characterized by wantonness, malice, oppression and other circumstances of aggravation. The pattern of conduct by the defendants were motivated by more than mere ignorance or oversight, but by personal gain.

**Answer:** **Defendant denies the allegations of paragraph 115 of Plaintiff's Verified Amended Complaint and demands strict proof thereof.**

WHEREFORE, Defendant, JAMIE WARMBIR, prays that Count V of Plaintiff's Verified Amended Complaint be stricken and dismissed with prejudice, and for such other and further relief as the Court deems equitable and just.

**COUNT VI**

**TORTIOUS INTERFERENCE WITH CONTRACTUAL RELATIONS AGAINST JAMIE WARMBIR AND WARMBIR IT SOLUTIONS, LLC**

116.     Mavidea repeats and realleges each and every allegation contained in Paragraphs 1 through 60 of the Complaint as if set forth fully herein.

**Answer:       Defendant repeats and realleges his answers to paragraphs 1-60 as and for his answers to paragraph 116 of Count VI of Plaintiff's Verified Amended Complaint.**

117.     Plaintiffs had valid and enforceable contracts with its customers that Jamie Warmbir and Warmbir IT Solutions, LLC have either attempted to appropriate to themselves or have appropriated to themselves.

**Answer:       Defendant denies the allegations of paragraph 117 of Plaintiff's Verified Amended Complaint and demands strict proof thereof.**

118.     Prior to any dates of termination, Plaintiff had performed the obligations under the contracts and had a reasonable basis to receive the benefits described therein.

**Answer:       Defendant lacks sufficient information to admit or deny the allegations of paragraph 118 of Plaintiff's Verified Amended Complaint.**

119.     Jamie Warmbir had prepared and executed most of the contracts for the customers of Mavidea while a Manager of Mavidea. He was aware of all customer contracts. Warmbir IT Solutions, LLC, through the knowledge of its owner/manager, Jamie Warmbir, also had the same knowledge.

**Answer:** Defendant admits that he prepared and executed contracts for some of the customers of Mavidea while a Manager of Mavidea and that he was aware of the contracts of some of Mavidea's customers during the time that he was a Manager of Mavidea. Further answering, Defendant denies that he prepared and executed most of the contracts for the customers of Mavidea while he was a Manager of Mavidea or that he was aware of all customer contracts. The remaining allegations of paragraph 119 of Plaintiff's Verified Amended Complaint constitute legal conclusions and therefore Defendant neither admits nor denies same but demands strict proof thereof. To the extent an answer is required to the remaining allegations of paragraph 119 of Plaintiff's Verified Amended Complaint, Defendant denies each remaining allegation of paragraph 119 of Plaintiff's Amended Verified Complaint and demands strict proof thereof.

120. Defendant intentionally and without legal justification induced a breach of the contract, thereby interfering with Plaintiff's rights under the contracts.

**Answer:** Defendant denies the allegations of paragraph 120 of Plaintiff's Verified Amended Complaint and demands strict proof thereof.

121. The contracts were, in fact, subsequently terminated.

**Answer:** Defendant admits that certain customers of Mavidea have terminated their contracts with Mavidea and become customers of Warmbir IT Solutions, LLC. Further answering Defendant denies the remaining allegations of paragraph 121 of Plaintiff's Verified Amended Complaint and demands strict proof thereof.

122. As a result of Defendants' wrongful conduct and the resulting terminations of the contracts, the Plaintiff has suffered damages, and are suffering ongoing damages.

**Answer:** Defendant denies the allegations of paragraph 122 of Plaintiff's

Verified Amended Complaint and demands strict proof thereof.

WHEREFORE, Defendant, JAMIE WARMBIR, prays that Count VI of Plaintiff's Amended Verified Complaint be stricken and dismissed with prejudice, and for such other and further relief as the Court deems equitable and just.

**COUNT VII**

**TORTIOUS INTERFERENCE WITH PROSPECTIVE ECONOMIC ADVANTAGE AGAINST JAMIE WARMBIR AND WARMBIR IT SOLUTIONS, LLC**

123.    Mavidea repeats and realleges each and every allegation contained in Paragraphs 1 through 60 of the Complaint as if set forth fully herein.

**Answer:      Defendant repeats and realleges his answers to paragraphs 1-60 as and for his answers to paragraph 123 of Count VII of Plaintiff's Verified Amended Complaint.**

124.    Plaintiff reasonably expected to enter into a valid business relationship with the businesses described on its confidential client tracking list.

**Answer:      Defendant denies the allegations of paragraph 124 of Plaintiff's Verified Amended Complaint and demands strict proof thereof.**

125.    Defendants, Jamie Warmbir and Warmbir IT Solutions, LLC had knowledge of Plaintiff's expectancy.

**Answer:      Defendant denies the allegations of paragraph 125 of Plaintiff's Verified Amended Complaint and demands strict proof thereof.**

126.    Defendants intentionally and unjustifiably interfered with Plaintiff's expectancy by directly and indirectly encouraging them to convert their business to Warmbir IT Solutions, LLC and by the other acts described herein.

**Answer:      Defendant denies the allegations of paragraph 126 of Plaintiff's**

Verified Amended Complaint and demands strict proof thereof.

127.   As a result of Defendants interference, Plaintiff failed to realize its expectancy on these customers.

**Answer:**   **Defendant denies the allegations of paragraph 127 of Plaintiff's Verified Amended Complaint and demands strict proof thereof.**

128.   Defendants' interference with Plaintiff's expectancy was willful, wanton and knowing.

**Answer:**   **Defendant denies the allegations of paragraph 128 of Plaintiff's Verified Amended Complaint and demands strict proof thereof.**

129.   As a result of Defendants' wrongful interference with Plaintiff's expectancy, Plaintiff has suffered damages in an amount to be determined through discovery and at the time of trial, but in an amount to exceed $2,778,413.00.

**Answer:**   **Defendant denies the allegations of paragraph 129 of Plaintiff's Verified Amended Complaint and demands strict proof thereof.**

WHEREFORE, Defendant, JAMIE WARMBIR, prays that Count VII of Plaintiff's Verified Amended Complaint be stricken and dismissed with prejudice, and for such other and further relief as the Court deems equitable and just.

### DEFENDANT JAMIE WARMBIR'S FIRST AFFIRMATIVE DEFENSE TO COUNT I OF PLAINTIFF'S VERIFIED AMENDED COMPLAINT

NOW COME the DEFENDANT, JAMIE WARMBIR ("Defendant"), by and through his attorneys, Cox & Fulk, LLC, and for his First Affirmative Defense to Count I of Plaintiff's Verified Amended Complaint, states as follows:

1.     Plaintiff, MAVIDEA TECHNOLOGY GROUP, LLC ("Plaintiff" or "Mavidea"), brings Count I of its Verified Amended Complaint for alleged violation of the Federal Defend Trade Secrets Act based upon its allegations that Defendant and/or Warmbir IT Solutions, LLC misappropriated the trade secrets of Mavidea.

2.     Specifically, Mavidea alleges that Defendant and/or Warmbir IT Solutions, LLC misappropriated the identity, pricing terms, contract lengths and services included for each customer of Mavidea.

3.     As of the time that Defendant resigned as a Manager of Mavidea, Mavidea's clients came from multiple industries throughout the central Illinois area.

4.     As of the time that Defendant resigned as a Manager of Mavidea, the identity of Mavidea's customers were readily ascertainable by any individual in the IT industry through proper means without access to Mavidea's customer list.

5.     As of the time that Defendant resigned as a Manager of Mavidea, competing IT businesses could identify Mavidea's customers by conducting internet searches, mass mailings, reviewing phone books or online directories.

6.     As of the time that Defendant resigned as a Manager of Mavidea, Mavidea's pricing terms were standard within the IT industry in central Illinois.

7.     As of the time that Defendant resigned as a Manager of Mavidea, the pricing terms for IT services provided by Mavidea were within the common range charged by IT providers for those services within the IT industry in central Illinois.

8.     As of the time that Defendant resigned as a Manager of Mavidea, the specific IT practices, procedures and services provide by Mavidea to its IT clients were industry standard practices, procedures and services taught by third-party vendors.

9. Specifically, as of the time that Defendant resigned his position as Manager of IT, Mavidea utilized IT practice, procedures and services taught by third-party entities such as Trumethods via a subscription service.

10. Accordingly, as of the time that Defendant resigned his position as Manager of IT, other IT providers in the central Illinois area could learn the practices, procedures and services provided by Mavidea to its IT clients by paying to learn those practices, procedures and services from the same third-party vendors who taught them to Mavidea.

11. As of the time that Defendant resigned as a Manager of Mavidea, the contract lengths of Mavidea's IT clients were accessible to any employee of Mavidea.

12. If approached, Mavidea's IT clients were free to indicate to any third-party the duration of each client's existing contract with Mavidea.

13. The Defend Trade Secrets Act (18 U.S.C. §1832) which amended the Economic Espionage Act to add a federal civil cause of action, among other things, defines "trade secret" to include all forms and types of financial, business or economic information, including patterns, plans, compilations, methods, techniques, processes, procedures or programs, if (A) the owner thereof has taken reasonable measures to keep such information secret, and (B) the information derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable through proper means by, the public.

14. Accordingly, the identity, pricing terms, contract lengths and services included for each IT customer of Mavidea do not constitute trade secrets within the meaning of the Defend Trade Secrets Act (18 U.S.C. §1832)

WHEREFORE, DEFENDANT, JAMIE WARMBIR, Individually, hereby prays that COUNT I of the Verified Amended Complaint filed by Plaintiff, MAVIDEA TECHNOLOGY

GROUP, LLC, be stricken and dismissed with prejudice, and for such other and further relief as the Court deems equitable and just.

**DEFENDANT JAMIE WARMBIR'S**
**FIRST AFFIRMATIVE DEFENSE TO COUNT V OF PLAINTIFF'S VERIFIED AMENDED COMPLAINT**

NOW COME the DEFENDANT, JAMIE WARMBIR ("Defendant"), by and through his attorneys, Cox & Fulk, LLC, and for his First Affirmative Defense to Count V of Plaintiff's Verified Amended Complaint, states as follows:

1. Plaintiff, MAVIDEA TECHNOLOGY GROUP, LLC ("Plaintiff" or "Mavidea"), brings Count V of its Verified Amended Complaint for alleged violation of the Illinois Trade Secrets Act based upon its allegations that Defendant and/or Warmbir IT Solutions, LLC misappropriated the trade secrets of Mavidea.

2. Specifically, Mavidea alleges that Defendant and/or Warmbir IT Solutions, LLC misappropriated the identity, pricing terms, contract lengths and services included for each customer of Mavidea.

3. As of the time that Defendant resigned as a Manager of Mavidea, Mavidea's clients came from multiple industries throughout the central Illinois area.

4. As of the time that Defendant resigned as a Manager of Mavidea, the identity of Mavidea's customers were readily ascertainable by any individual in the IT industry through proper means without access to Mavidea's customer list.

5. As of the time that Defendant resigned as a Manager of Mavidea, competing IT businesses could identify Mavidea's customers by conducting internet searches, mass mailings, reviewing phone books or online directories.

6.      As of the time that Defendant resigned as a Manager of Mavidea, Mavidea's pricing terms were standard within the IT industry in central Illinois.

7.      As of the time that Defendant resigned as a Manager of Mavidea, the pricing terms for IT services provided by Mavidea were within the common range charged by IT providers for those services within the IT industry in central Illinois.

8.      As of the time that Defendant resigned as a Manager of Mavidea, the specific IT practices, procedures and services provide by Mavidea to its IT clients were industry standard practices, procedures and services taught by third-party vendors.

9.      Specifically, as of the time that Defendant resigned his position as Manager of IT, Mavidea utilized IT practices, procedures and services taught by third-party entities such as Trumethods via a subscription service.

10.     Accordingly, as of the time that Defendant resigned his position as Manager of IT, other IT providers in the central Illinois area could learn the practices, procedures and services provided by Mavidea to its IT clients by paying to learn those practices, procedures and services from the same third-party vendors who taught them to Mavidea.

11.     As of the time that Defendant resigned as a Manager of Mavidea, the contract lengths of Mavidea's IT clients were accessible to any employee of Mavidea.

12.     If approached, Mavidea's IT clients were free to indicate to any third-party the duration of each client's existing contract with Mavidea.

13.     Pursuant to 765 ILCS 1065/2(d), "Trade Secret" is defined as:

"information, including but not limited to, technical or non-technical data, a formula, pattern, compilation, program, device, method, technique, drawing, process, financial data, or list of actual or potential customers or suppliers, that:

(1) is sufficiently secret to derive economic value, actual or potential, from not being generally known to other persons who can obtain economic value from its disclosure or use; and

(2) the subject of efforts that are reasonable under the circumstances to maintain its secrecy or confidentiality.

14.    Accordingly, the identity, pricing terms, contract lengths and services included for each IT customer of Mavidea do not constitute trade secrets within the meaning of 765 ILCS 1065 *et seq..*

WHEREFORE, DEFENDANT, JAMIE WARMBIR, Individually, hereby prays that COUNT V of the Verified Amended Complaint filed by Plaintiff, MAVIDEA TECHNOLOGY GROUP, LLC, be stricken and dismissed with prejudice, and for such other and further relief as the Court deems equitable and just.

Dated:  August 18, 2020

JAMIE WARMBIR,

Defendant

/s/ A. Christopher Cox

A. Christopher Cox
ARDC# 6296142
Cox & Fulk, LLC
202 North Center Street
Bloomington, IL 61701
(309) 828-7331
christophercox@cxflegal.com

# **VERIFICATION**

I, Jamie Warmbir, verify under penalty of perjury that, to the best of my knowledge and recollection, the foregoing Answer to Verified Amended Complaint is true and correct.

Executed this 18th day of August, 2020

_____
Jamie Warmbir

## CERTIFICATE OF SERVICE

I hereby certify that on August 18, 2020 I electronically filed the foregoing documents with the Clerk of Court using the CM/ECF system that will send notification of such filing(s) to the following:

Jason Bartell                           Email:  jbartell@bartellpowell.com

Michael Powell                    Email:  mpowell@bartellpowell.com


                                     /s/ A. Christopher Cox

A. Christopher Cox
ARDC# 6296142
Cox & Fulk, LLC
202 North Center Street
Bloomington, IL 61701
(309) 828-7331
christophercox@cxflegal.com