E-FILED
Wednesday, 07 October, 2020  02:52:43 PM
Clerk, U.S. District Court, ILCD

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF ILLINOIS
## PEORIA DIVISION

| | | |
|---|---|---|
| **MAVIDEA TECHNOLOGY GROUP, LLC** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Case No.**   **1:20-CV-1139** |
| | ) | |
| **JAMIE WARMBIR; CHARLOTTE WARMBIR; WARMBIR IT SOLUTIONS, LLC, an Illinois limited liability company;** | ) ) ) ) | **JURY TRIAL REQUESTED** |
| | ) | |
| **Defendants.** | ) | |

### MOTION FOR RULE TO SHOW CAUSE AND FOR SANCTIONS DUE TO SPOLIATION OF EVIDENCE

NOW COMES the Plaintiff, Mavidea Technology Group, LLC, by its attorneys, Bartell Powell LLP, and pursuant to Federal Rule of Civil Procedure 37(e), moves for sanctions against Defendant, Jamie Warmbir, and Third Party, Jeffrey Shelton, for spoliation of evidence and in support thereof states:

1.     Defendant, Jamie Warmbir had a duty to preserve all evidence related to this case because Defendant received a Preservation Notice (a copy of which is attached hereto as Exhibit A) on March 11, 2020 from the Plaintiff.  This cause of action was filed on April 3, 2020.  A major portion of the lawsuit relates to the Defendants' efforts to poach the employees of the Plaintiff's IT Department and assist him in his efforts to procure and provide services to the Plaintiff's customers.

2. Jeffrey Shelton was the senior-most employee of the IT Department next to Jamie Warmbir.  He had notified the Plaintiff that he was intending on retiring in June of 2020.  Mr.

Warmbir recruited all of the other IT Department employees over to his company but left Mr. Warmbir working at Mavidea prior to his "retirement."  Shortly after Mr. Shelton "retired," the Plaintiff learned several facts that suggested Mr. Warmbir was utilizing Mr. Shelton for the Defendants while he was still employed at Mavidea and that the "retirement" story was a fictitious falsehood created so that Mr. Warmbir could gain inside help on the transition.  Mr. Shelton attended Mr. Warmbir's pizza party the week after Mr. Warmbir left Mavidea where Mr. Warmbir coordinated with his former employees the migration of the employees to his firm. One client of Mavidea, Midstate Collections, indicated that Mr. Shelton convinced them to switch to Warmbir IT while he was working for the Plaintiff..  We know from the phone records that were produced by the Defendants that frequently Mr. Warmbir was speaking on the phone with Mr. Shelton several hours a week after Mr. Warmbir left.  Jamie Warmbir bragged to a client that he could use his "back channels" at Mavidea to obtain information for them.  We suspect the "back channel" was Mr. Shelton.  We also know that Mr. Shelton was installing Mr. Warmbir's software at the Defendant's request on the computers of former Mavidea clients while he was working at Mavidea.  Mr. Shelton "retired" on June 26, 2020.  About a week later on July 4, 2020, Jamie Warmbir offered him a job as the second in charge of his organization with the same salary he was earning at Mavidea, which Mr. Shelton accepted and began work at Warmbir IT.

3.      On August 7, 2020, Defendant, Jamie Warmbir, was provided with Requests for Production (a copy of which is attached hereto as Exhibit B) that specifically requested in Request #20 to "provide all forms of written communication with each and every employee of Mavidea… including all data communications and programs, with and between Jeffrey Shelton…"

4.      On May 14, 2020, Jeffrey Shelton, received the subpoena attached hereto as Exhibit C.  Said subpoena required him to provide "All correspondence (including but not limited to emails, messaging services (such as LinkedIn or Facebook), texts, letters, reports and other forms of written or electronic communication), to, from and between you, your spouse and/or friends on your behalf, and Jamie Warmbir, Charlotte Warmbir or any other person on behalf of Warmbir IT Solutions, LLC from May 1, 2019 to the present."

5.      Initially, Jeffrey Shelton refused to comply with the subpoena because he said it violated his rights as an employee of Mavidea to be forced to produce any documents from Messaging services (see attached Exhibit D).  Plaintiff was forced to file a Motion to Compel on July 21, 2020 (Docket Entry #24).  Shortly prior to his response deadline, he contacted Plaintiff's counsel and indicated that he was withdrawing his objection, but despite his objection he didn't have any documents that would be responsive to that question.  Plaintiff tendered a Second Amended Response (see attached Exhibit E) verifying "I hereby affirm that I have not caused, or permitted by inaction, the destruction of any documents or content outlined in paragraph (a)(2) of this Second Amended Response at any time since the May 18, 2020, service of this Subpoena to Produce; nor-to the best of my knowledge and recollection- have I caused, or permitted by inaction, any such documents to be destroyed."[1]

6.  On September 8, 2020, Charlotte Warmbir tendered interrogatory responses back that indicated as follows (her response has been put in bold below by the Plaintiff) (Attached hereto as Exhibit F):

---

[1] Plaintiff's counsel had indicated to Mr. Shelton that he would no longer pursue the Motion to Compel.  However, the Court granted the Motion before Plaintiff's counsel could request the Court to seek withdrawal of the Motion. Thus, this motion is not claiming that Mr. Shelton's actions were a violation of the Court's Order to Compel, but the apparent spoilation is it's own independent violation.

INTERROGATORY NO. 6: If any documents relevant to any aspect of or issue contained in Plaintiff's Amended Complaint have been lost, misplaced, or destroyed, please identify fully each such document and describe how it was lost, misplaced, or destroyed.

**…Further answering, to the best of Charlotte Warmbir's knowledge at this time, certain Whatsapp discussions between Jamie Warmbir and Jeff Shelton were inadvertently deleted.  These discussions occurred between late April of 2020 through mid-July of 2020. Likewise, certain text messages to Jamie Warmbir's phone for the period of time between approximately March of 2020 and approximately May 1, 2020 were inadvertently not saved…**

7.  "Whatsapp" is a messenging service that allows its users to send each other instant messages.  Mrs. Warmbir's interrogatory response indicates that the discussions were "inadvertently deleted."  However, to delete a message in "Whatsapp," three steps must be taken for EACH message that a user wants to be deleted.  Additionally, only the sender of a message is permitted to delete the message for everyone who is part of such a discussion.  Attached to this motion as Exhibit G are the instructions from software provider of Whatsapp on how each message can be deleted.

8.  In the case at hand, both Jeff Shelton and Jamie Warmbir have said that they have no messages to produce.  We can presume from Mrs. Warmbir's response that multiple conversations were deleted spanning almost three months and it is likely that multiple messages were sent per each conversation.  With three steps needed to delete each message by each sender, it is not plausible that all of these conversations were "inadvertently" deleted and are no longer producible by BOTH participants to the conversations who were using different accounts to login.

9.  Additionally, Mrs. Warmbir indicated that text messages were also sent in addition to the use of the WhatsApp software.  She indicates that the text messages were "inadvertently not saved."  This is also not plausible, as text message conversations via cellular phones are by default saved until they are deleted by the user.  Again, both the sender and the recipient would separately need to affirmatively delete the messages for them to be unavailable for production.

10.  Given that both Jeff Shelton and Jamie Warmbir would have been required to take many affirmative actions to destroy these messages, the Court should infer that this evidence was intentionally deleted by Jeff Shelton and Jamie Warmbir.  Furthermore, this spoilation took place after the parties were on notice to preserve such evidence.

11.  The following sanctions are available here:

a.  A default judgment against the Defendant for their bad faith spoliation of evidence;

b.  In the alternative, an instruction to the jury that Defendant had a duty to preserve all electronic documents and data concerning David Mizer Enterprises, Inc. beginning in May 2014, and of an inference that the evidence not preserved by the Defendants was probably adverse to the Defendants in this case;

c.  An award of reasonable attorney's fees;

d.  Such other and further sanctions and relief deemed appropriate by the Court considering the extraordinary circumstances of this case.

WHEREFORE, Plaintiff moves the Court for an order:

(1) holding a hearing on this Motion whereby Jeffrey Shelton and Jamie Warmbir be ordered to appear and to show cause why they should not be found in contempt of court for intentionally spoiling evidence in this case;

(2) compelling Defendant, Charlotte Warmbir, to testify at said hearing to reveal how she came to learn of the destruction of this evidence and what such evidence consisted of;

(3) after hearing, finding that Defendants are responsible for the wrongful spoliation of evidence in this case,

(4) enter an order awarding Plaintiff it's costs and reasonable attorneys fees for bringing this motion;

(5) order a forensic computer evaluation at their cost of Jeffrey Shelton and Jamie Warmbir's computers, phones and any other devices on which this evidence may have been stored on to determine whether the destroyed evidence is retrievable.

(6) if such information is not retrievable, an instruction to the finder of fact that Defendant had a duty to preserve all electronic documents and data concerning the Plaintiff beginning in March, 2020, and of an inference that the evidence not preserved by the Defendants was probably adverse to the Defendants in this case.


Respectfully Submitted,


Bartell Powell LLP


/s/ Jason S. Bartell
Jason S. Bartell, a member of the firm

ATTORNEYS FOR THE PLAINTIFF

Bartell Powell LLP
10 E. Main St.
Champaign, IL 61820
(217)352-5900
jbartell@bartellpowell.com

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that on October 7, 2020, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will send notification of such filing to the following attorneys:

A.  Christopher Cox
Cox & Fulk, LLC
2020 N. Center
Bloomington, IL 61701

I have caused the foregoing pleading to be mailed, by both regular mail and certified mail, on this 7th day of October, 2020 by depositing the same in a U.S. Mail receptacle in Champaign, Illinois to the following non-CM/ECF participants:

Mr. Jeffrey Shelton
18 Donna Drive
Normal, IL  61761

<u>/s/ Jason S. Bartell</u>
Jason S. Bartell, a member of the firm

ATTORNEYS FOR THE PLAINTIFF

Bartell Powell LLP
10 E. Main St.
Champaign, IL 61820
(217)352-5900
jbartell@bartellpowell.com